SUSAN MOORE, EXECUTRIX, v. H. W. MOORE.

No. 2489.

1. **Trial Amendment.**—It is no cause of complaint that after exceptions had been overruled a trial amendment was allowed supplying in detail the defects attacked by the exceptions.

2. **Same.**—Such action is not in conflict with Rule 27 for District Courts, which is "When the exceptions have been presented and decided leave may be granted either or both parties to file an amendment," etc.

3. **Cross Examination—Impeaching Witness.**—For the purpose of discrediting a witness testifying in his own behalf, he was asked whether he had not taken what is called the iron clad oath for the purpose of holding office in reconstruction times, and had he not during the war of the so-called rebellion voluntarily entered into the military service of the Confederacy, and had he not as a minister of the gospel prayed for the success of the Confederacy, and among other petitions had asked that they (meaning the Federals) should be made "fools in council and cowards in battle." Objections that the question was incompetent and the matter irrelevant were properly sustained.

4. **Charges.**—The several parts of the charge to the jury upon the same subject must be taken together. When so taken and construed the charge is applicable to the testimony; isolated parts will not be considered as error, although if standing alone they would be.

5. **Cases Followed.**—59 Texas, 63, and 67 Texas, 297, being this case on former appeals, adhered to.

6. **Husband and Wife—Pendency of Divorce Suit.**—The husband during coverture has the power to control and sell community property. Divorce proceedings limit that right and inhibit conveyances "with a fraudulent view of injuring the rights of the wife." If the rights of the wife require further protection or restriction, an injunction must be invoked.

7. **Community Property.**—A divorced wife sought to establish claim to a community interest in a tract of land sold by the husband pending the divorce suit. *Held,* that it was a defense if the wife had in fact received one-half of the community property. It was proper so to instruct the jury when the issue was made by the pleadings and evidence.

8. **Charges—Immaterial Error.**—A charge upon an immaterial issue, and which could not have affected the result, is not ground for reversal.

9. **Argument of Counsel.**—When counsel in argument go beyond a discussion of the issues arising out of the pleadings and evidence exceptions should be taken at once. It is only where remarks of counsel are reprehensible, not provoked by the other

side and in answer thereto, called to the attention of the court and not by the court checked, and some probability existing that the verdict was influenced thereby, that they will be ground for reversal.

APPEAL from Houston. Tried below before Hon. Felix J. McCord.

This is the fourth appeal in this case; 54 Texas, 294, 59 Texas, 63, and 67 Texas, 297. The opinion fully states all facts necessary.

*D. A. Nunn,* for appellant. — 1. In so far as the trial amendment makes allegations touching the plea of defendant, to which exceptions by plaintiff had been overruled, it is unauthorized by the rules of pleading as prescribed by this court, and can not be considered. See Rule 27, Dist. Ct. Prac.

2. The court erred in excluding evidence offered to impeach the credibility of defendant H. W. Moore as witness on the cross-examination, as shown by bill of exceptions on file. (See opinion.) 1 Greenl. Ev., 13 ed., sec. 459.

3. The charge is erroneous in authorizing the jury to give effect to the deed of C. A. Rice made during the pendency of the divorce suit, in manner to defeat the operation of the judgment rendered in said suit in favor of Jane Rice and without requiring the essential and fundamental condition that there was no injury resulting to Jane Rice by a sufficient estate being left for her satisfaction and subject to her claim. Moore v. Moore, 59 Texas, 54; Rice v. Rice, 31 Texas, 174.

4. The charge of the court should be confined to the issues raised by the pleadings upon which there is evidence sufficient to warrant a finding by the jury. Mims v. Mitchell, 1 Texas, 443; Texas Mut. Life Ins. Co. v. Davidge, 51 Texas, 244; Texas Bank v. Stone, 49 Texas, 4; Lewin v. Houston, 8 Texas, 94; Guess v. Lubbock, 5 Texas, 535.

5. Pending a divorce suit by the wife against the husband, by statute it is declared to be unlawful for the husband to dispose of the community estate, provided the same is done with fraudulent intent to injure the wife. This does not require notice, as matter of fact, to the purchaser of such estate, but the notice arises by implication from the existence of the suit, thereby giving application to the doctrine of *lis pendens.* Hollingsworth v. Holshausen, 17 Texas, 47; Austin v. Talk, 20 Texas, 167; Anderson v. Smithwick, 20 Texas, 118; Hampton v. Dean, 4 Texas, 455; Earl v. Thomas, 14 Texas, 583; McGreal v. Wilson, 9 Texas, 429; Lee v. Hamilton, 12 Texas, 419.

6. It is believed to be the law that the suit by R. P. Trabue v. C. A. Rice, with service on C. A. Rice alone, pending a suit for divorce between C. A. and Jane Rice, resulting in a judgment in favor of Trabue for the 500-acre homestead tract of land in a court of competent jurisdiction, would have the effect to bind the wife Jane Rice unless she could show fraud and collusion between the plaintiff Trabue and the defendant C.

A. Rice for ·the purpose of ·injuring her, and conveyance thereunder to innocent purchasers would be binding notwithstanding the fraud. Moore v. Moore, 59 Texas, 57; Cannon v. Hemphill, 7 Texas, 200; Burleson v. Burleson,·28 Texas, 385–417; Pasch. Dig., arts. 4621–4636; Herm. on Estop., sec. 59, p. 56.

7.    The verdict of .the jury was against the law and without evidence to support it in this:   There was no evidence to authorize a finding that Jane Rice or her vendees had ever obtained·'her half interest out of this land or anything in lieu thereof, nor was there any evidence to support. the finding that the probate claim sued on had been paid or satisfied, or that any circumstances exist now or ever did exist that would bind Jane Rice not to assert right upon said claim, or·to justify the finding that she or her vendees are not entitled to satisfaction.   Green v. Hill, 4 Texas, 468; Davidson v. Edgar, 5 Texas, 496; Baker v. Cook, 13 Texas, 81; Ragland v. Wisrock, 61 Texas, 394; Randal v. Collins, 58 ·Texas, 231; Woodson v. Collins, 56 Texas, 168; I. & G. N. and Mo. Pac. Ry. Co. v. Kindred, 57 Texas, 503; G. H. & S. A. R. R. Co. v. Bracken, 59 Texas, 76; H. & T. C. Ry. Co. v. Schmidt, 61 Texas, 285.

8.    It is the duty of counsel to confine their argument before the jury to issues raised by the pleadings upon which the case is tried and the evidence adduced and pertinent to such issues.   Willis & Bro. v. McNeill, 57 Texas, 465; Rules of Dist. Ct., 39–41; Franklin v. Tiernan, 62 Texas, 92; T. & St. L. R. R. Co. v. Jarrell,. 60 Texas, 267, 268..

. *J. R. Burnett*, for appellee. — On cross-examination of witness.   1· Whart. on Ev., sec. 541; Turnpike Road Co. v. Loomis, 32 N. Y., 127; Comm. v. Shaw, 58 Mass., 593.

On charges of court.   Moore v. Moore, 59 Texas, 63; Hagerty v. Harwell, 16 Texas, 663.

Argument of counsel.   Railway Co. v. Garcia, 62 Texas, 289; Radford v. Lyon, 65 Texas, 472.

HOBBY, JUDGE.—This is the fourth appeal in this cause.   Because the record failed to disclose perfect service on one of the heirs of Jane Rice a judgment rendered in this controversy was in 1879 reversed by the Supreme Court.   Moore v. Rice, 51 Texas, 294.

At the fall term, 1880, of the District Court it was again tried, and judgment rendered for the present appellee, which was appealed from.   In the opinion rendered upon that appeal the issues believed to be essential to the determination of the rights of the parties were by the Supreme Court. directed to be disposed of as follows:

" On another trial it will be unnecessary to present to the jury the issue as to whether or not the claim of Jane Rice against the estate of her husband was spurious and fraudulent.   That matter was not a proper sub-

ject for inquiry under the facts and pleadings in the case. If· on such trial, with sufficient proof and under a proper charge, the jury shall find that the appellee did in fact perform valuable and important services as alleged that were necessary and essential to the preservation and protection of the community estate of C. A. Rice and his wife Jane in this land; if they shall also find that the conveyance made to him by C. A. Rice was executed in entire good faith and for a valuable and sufficient consideration, and with no purpose or intent to defraud Jane Rice of her just and lawful right and claims on the community estate, for the protection of this estate, then no part of the land so purchased by appellee would be chargeable with the claim of appellant; and under such circumstances the appellee is entitled to the same. If, however, the jury shall believe that the sale was colorable or the result of a fraudulent conspiracy between appellee and C. A. Rice, or that Rice's intention in making the sale was fraudulent and that intent known to appellee, then one-half of the land in the hands of appellee would be charged with the payment of Jane Rice's claim against C. A. Rice's estate (unless that claim is shown by proof to have been already paid) and the other half would belong to the appellant." 59 Texas, 63.

Another trial resulted in a judgment for the appellant and appellee each for one-half the land, which upon appeal therefrom by the present appellee was reversed because the verdict did not sufficiently determine the issues and did not support the judgment. Moore v. Moore, 67 Texas, 297.

It was also held that the law applicable to this case had been settled in the former opinion (59 Texas, 54), and was adhered to, and a clear, condensed statement of the issues involved was given, set forth in the opinion delivered by Judge Gaines as follows: "Plaintiff (appellant) claimed that the land was conveyed to appellee by C. A. Rice, the husband, during the pendency of the divorce suit, with intent to defraud the wife of her interest in the community estate, and that it was for that reason void as to her, and therefore the plaintiff as assignee of her rights was entitled to recover directly one-half of the land and have the other half subjected to the payment of the probated claim against the husband's estate. The defendant (appellee) denied this, and alleged that the land was conveyed to him in good faith and in consideration of services rendered by him in the preservation of the community estate, and that the wife after her claim was allowed received from the husband's part of the community estate property sufficient to satisfy that debt."

Referring to the construction of the writ of error bond in the previous opinion Judge Gaines said: "The opinion holds that the bond given in that case was not a supersedeas bond, and that it did not revive the injunction, and expressly reserves the point as to the effect of a supersedeas in such a case. The principle laid down is that the writ of error was the continuation of the old suit and not the beginning of a new one, and

that one who bought after the judgment was rendered and before the writ of error was sued out was a purchaser *pendente lite*." 67 Texas, 294–7.

The trial which immediately succeeded the last reversal referred to, and from which *this* appeal is prosecuted, was had at the October Term, 1887, of the District Court, upon the issues directed in the opinion, and resulted in a judgment for the appellee for all of the land. This appeal is upon twenty-one assignments of error.

The first relates to the action of the court in "overruling the plaintiff's general and special exceptions to the defendant's allegations as to the encumbrances on the land alleged to have been removed by him and constituting the consideration for the land in the nature of services rendered for the preservation of the estate." The averments excepted to were filed in October, 1884, and were in substance: "That a contract was made by C. A. Rice with appellee, evidenced by a bond for title. By the terms of the contract appellee was to visit Robertson County, pay all of the back taxes on the land, remove all encumbrances thereon, examine the records, and' clear the title and possession. That Rice had neglected to look after the land or to pay the taxes thereon for several years. That one Ben Brown held an outstanding title to about 1500 acres of the land and held a claim on the same for other taxes paid by him, giving the amounts and dates and alleging their accrual prior to 1861, and amounting to about $360. That he had paid said taxes and in all things performed the contract," etc.

The exceptions to this plea were filed in October, 1887, and were in effect "That the allegations did not show in what consisted the outstanding title of said Brown or in what way he could have as against C. A. and Jane Rice an outstanding title, and did not show that the payment of taxes by said Brown was or could become a claim of any character to encumber the title of C. A. and Jane Rice." These exceptions were overruled and others unnecessary to be noticed were sustained. Defendant then obtained leave to file a trial amendment. This trial amendment (although plaintiff's exceptions as stated had been overruled) set forth more specifically the contract between C. A. Rice and appellee; the services rendered; payment of taxes by Brown; that he held a tax deed for the land; alleged its destruction by fire after it had been delivered by Brown to appellee; that. the precise time at or amount for which the land was sold for taxes could not be given, but that taxes were not paid by C. A. or Jane Rice or any persons for them for the years 1859, 1860, and 1861, for which years the same was sold and Brown became the purchaser; that the removal of these encumbrances was essential," etc.

The appellant insists that in so far as the trial amendment sought by its allegations to perfect the plea excepted to, and which exceptions had been overruled, it was not authorized by the rule regulating the manner of pleading in the District Court, and that it was "incumbent on the de-

fendant to allege specially the facts showing encumbrances and that they were such; that their removal constituted a valuable consideration in the rendition of important services, etc., for the preservation of the estate, which would be sufficient to support a deed from C. A. Rice made pending the divorce suit."

The answer of the defendant we are of opinion set forth with sufficient fullness of detail all that was necessary to be established by proof showing the performance of important services for the preservation of the community estate of C. A. and Jane Rice. And if any doubt could arise as to this from the averments of the answer, the trial amendment alleged with particularity everything that could have been essential to prove in this respect to establish, as indicated in the former opinion, the payment of a valuable consideration for the land by appellee in the rendition of services for the protection of the estate.

The fact that the deed from C. A. Rice was executed by him pending the divorce suit then in the Supreme Court, but not under the operation of a supersedeas bond (as was decided), did not require any other allegation or affect this defense in any manner.

In allowing the trial amendment to be filed, containing allegations seeking to perfect the plea to which the exceptions of the plaintiff had been overruled, there was no violation of the Rule 27 for the government of the District Court invoked by appellant. The language of that rule regulating the filing of a trial amendment does not make the right to file the same depend upon the contingency of the exceptions to the original plea being sustained. "When the exceptions have been *presented* and *decided,* leave may be granted either or both parties to file an amendment," etc., is the phraseology of the rule. Although in overruling exceptions to a plea it is a judicial declaration that the pleading attacked is sufficient, still there can be no impropriety in or injury resulting from the permission to amend the assailed plea.

And this is especially true when the court may entertain a doubt as to the correctness of its ruling. Nor do we think that the court's action in this respect can be consistently objected to or complained of by one whose exceptions, if they had prevailed, might have necessitated or at least made admissible the amendment assigned as error. In this case the general and special exceptions were in effect an assertion that other allegations were necessary to perfect the defendant's answer; and because these exceptions were overruled affords no just reason for complaint that subsequently these allegations were allowed to be made which the plaintiff's exceptions had said were essential. Hutchins v. Wade, 20 Texas, 9; Hays v. I. & G. N. R. R. Co., 46 Texas, 278.

The second assignment relates to the exclusion by the court of evidence offered to impeach the credibility of the defendant's witness H. W. Moore. It appears from the bill of exceptions presenting this question

that "the defendant H. W. Moore, being on the witness stand and testi-
fying in his own behalf, the plaintiff proposed to prove by him that he did
voluntarily take what is commonly known as the iron clad oath, whereby he
qualified himself to hold and did hold office under the Federal govern-
ment after the late war; and further, that such oath was inconsistent with
existing facts, in this, that he thus swore that he never aided or assisted the
so called rebellion, when in truth he had at one time volunteered to go into
the Confederate service, and that as a minister of the gospel during the war
he had prayed for the success of the Confederacy, then in hostility to the
United States government, and that among other things he prayed that
'the enemy (meaning the Federals) should be made fools in council and
cowards in battle.'" The purpose of this evidence was to impeach the
credibility of the defendant as a witness. The defendant objected to the
same because it was incompetent and irrelevant. The objection was sus-
tained, the evidence excluded, and its exclusion is assigned as error.

The valuable treatise of Mr. Greenleaf on Evidence, which it may
safely be asserted is the most universally accepted authority on that
branch of the law, says, in discussing the feature of it relating to the
mode of conducting the examination of a witness: "That his credit may
be impeached in various modes besides that of exhibiting the improba-
bilities of his story by a cross-examination: 1. By disproving the facts
stated by him by the testimony of other witnesses. 2. By *general evi-
dence affecting his credit* for veracity. But in impeaching the credit of
a witness the examination must be confined to his general reputation and
not be permitted as to particular facts." Sec. 461.

The obvious reason for the inhibition against an inquiry into the par-
ticular instances of the witness's conduct which may be supposed to
affect his credibility, is the supposition that "every man is capable of
supporting the one, but it is not probable that without notice he will be
prepared to explain the other." Another reason adverted to for the rule
that particular independent facts, though bearing on the question of ve-
racity, can not be put in evidence for this purpose, is the evil of raising
collateral issues. 1 Whart. Ev., sec, 562.

If in this case the witness had given a negative reply it could not be
claimed that if objection had been made he could have been contradicted.
And the reason he could not have been so contradicted is found in the
rule that it is as to such matters as are relevant only to the issue that he
could be contradicted. And this does not embrace collateral matters
raised upon cross-examination for the purpose of impeaching him as to
an issue not involved on the trial. The testimony sought to be used
here manifestly is not within any of the above mentioned classifications.
It was wholly foreign to the questions in controversy and could "afford
no reasonable inference as to the matters in dispute." Marx v. Bell, 48
Ala., 497; Gt. W. Turnpike v. Loomis, 5 Ct. App. N. Y., 132.

The next four assignments attack detached paragraphs of the charge, which when considered with the context and read as a whole will not we think be found to be subject to the objections raised by the appellant. It is argued "that the jury were authorized to give effect to the conveyance from C. A. Rice to the appellee, made during the pendency of the divorce suit, in a manner to defeat the operation of the judgment rendered in that suit in favor of Jane Rice, without the fundamental condition that there was no injury resulting to her by a sufficient estate being left for her satisfaction and subject to her claim." And in support of this the following extract taken from the charge is cited:

"If you find from the testimony said H. W. Moore did in fact perform valuable and important services that were necessary and essential to the protection and preservation of the community estate of C. A. Rice and his wife Jane in this land, and if you should further find that the conveyance made to him by C. A. Rice was executed in entire good faith and for a valuable consideration and with no purpose or intent to defraud Jane Rice of her just and lawful rights and claims on the community estate, for the protection of the estate, then no part of the land so purchased by H. W. Moore would be clouded with plantiff's claim." If, as contended, because the deed from C. A. Rice was made pending the divorce suit it was essential to its validity that no injury resulted to Jane Rice by reason of the fact that there was not enough left of the estate to satisfy her claim, this idea was sufficiently conveyed in the paragraph of the charge immediately following that complained of, and which is in this language: "But if H. W. Moore did not perform valuable and important services necessary and important to preserve the community estate, and the deed was made by C. A. Rice to H. W. Moore with a fraudulent purpose on Rice's part to destroy, injure, or impair the rights of Jane Rice in the community estate, or if said deed had the effect to injure said Jane Rice's community interest, then the deed to Moore could not protect him from plaintiff's right to a recovery of an undivided half of said 1020 acres, and you will so find."

With reference to the effect of the divorce suit the jury were informed in another part of the charge, "There being a divorce suit pending between C. A. Rice and his wife Jane at the time of the deed to appellee, then if it was fraudulent, or if said deed had the effect to injure her rights, it would be void whether appellee had actual notice or not of such intent or effect."

The jury had also been instructed, "That if the sale by C. A. Rice to H. W. Moore was colorable or the result of a fraudulent conspiracy between Moore and Rice, or that Rice's intention in making the sale was fraudulent and that intent was known to Moore, then one-half of the land would be subject to the probated claim, and if they so believed they would find the claim to be a charge upon one-half of the

land, unless it had been satisfied or there were sufficient assets to satisfy said claim, and if so the claim would not be chargeable on the land. If Jane Rice had afterward received in kind sufficient property to amount to her share of the community property she would not be entitle to recover one-half of said land."

The facts disclosed by the evidence upon which the charge was predicated were that in 1857 Jane Rice instituted in the District Court of Houston County a suit for divorce against her husband C. A. Rice. Her right and interests in the community property were involved therein. This land constituted a portion of the property. In October, 1857, pending the suit, she obtained an injunction prohibiting C. A. Rice from alienating any of the community estate. In September, 1858, a decree was rendered in the District Court adversely to her and which dissolved the injunction. In July, 1860, about twenty-two months after the judgment was rendered against her in the District Court, a petition and bond for writ of error attached the jurisdiction of the Supreme Court, where in 1868 the judgment of the District Court was reversed and the divorce granted and one-half of the community property awarded to her, which consisted of the two-thirds of a league, of which the tract involved in this suit is a part, besides personal property estimated at $1820 and other property.

Appellee having purchased the land from C. A. Rice in February, 1867, pending the writ of error, was therefore a purchaser *pendente lite*, and would stand charged with notice of whatever rights were then existing in Jane Rice to the land. Randall v. Snyder, 64 Texas, 352; Harle v. Langdon, 60 Texas, 555.

The injunction having been dissolved by the judgment of the District Court in the divorce suit, and the writ of error bond filed in July, 1860, not being a supersedeas and not having the effect to revive the injunction (59 Texas, 58), her rights were regulated by the act then in force "concerning divorce and alimony." Under the ninth section of that law (Pasch. Dig., art. 3457) the validity of the conveyance executed by the husband pending a divorce suit, so far as it affected the wife's interests in the community, depended upon whether it was made with the fraudulent view of injuring the rights of the wife. It would not be affected by the mere fact that there was not a sufficiency of the estate remaining to satisfy a claim subsequently established by her against his estate for waste of her community interests.

The general power which by law the husband possesses to manage and control the community estate includes also the power to sell and convey the land in consideration of services rendered the estate. The language of the act mentioned above "clearly rests the prohibition against alienation upon the fraudulent intent with which it is made, and throws the

burden of proof of such fraudulent view on the party impeaching its fairness." Hagerty v. Harwell, 16 Texas, 665.

"If any other character of alienation of the community by the husband is sought to be prevented pending a divorce suit, this can be attained by an injunction," is the language used in the case cited. The injunction, as we have seen, having been dissolved and not revived by the writ of error bond, the interest of Jane Rice in the community (notwithstanding the divorce suit was pending) was subject to be conveyed by C. A. Rice in any other manner than that prohibited by the statute, namely, "with the fraudulent view of injuring the rights of the wife."

These issues were fairly presented by the charge of the court, which was couched in the carefully expressed language of the opinion of Judge West in 59 Texas, 59, in this case, which was subsequently declared by Judge Gaines to be in effect a clear statement of the law applicable to the merits of the case. 67 Texas, 295.

The jury were told that the probated claim of Jane Rice was a valid charge upon the estate of C. A. Rice; that it could not be impeached; that appellant's testator as her assignee succeeded to all of her rights; that a conveyance made by C. A. Rice during the pendency of the divorce suit, with the intent to defraud Jane Rice, or having the effect to injure her interest in the estate, would be void, and this without regard to whether appellee knew of this intent or this effect. A conclusive answer to the objections to the charge is that it is in full accord with the principles previously laid down in the opinions cited.

The seventh assignment is in substance that the court erred in submitting the issue of fact to the jury, that plaintiff would not be entitled to recover one-half interest in the land if Jane Rice had received in kind property sufficient to amount to her share of said estate, when there was no evidence to support such charge. It is also contended in this connection that "the homestead occupied by C. A. Rice and his wife Margaret at the time of his death in 1867, which was appropriated by Jane Rice, and which is valued at about $2000, should not be charged to her in a settlement with the estate of C. A. Rice," etc.

It appears that the decree of the Supreme Court in 1868, awarding to Jane Rice one-half of certain community property included the two-thirds of a league of which the 1020-acre tract is a part, made no reference to the homestead tract.

It appears from the evidence that prior to the rendition of the judgment in the divorce suit in 1858 in the District Court of Houston County a judgment by default was recovered in the United States at Tyler by R. P. Trabue against C. A. Rice for the homestead tract of land of 500 or 600 acres near Crockett occupied by Rice. This property was subsequently conveyed by Trabue to Joseph Rice, a brother of C. A. Rice. It was sold by the administrator of Joseph Rice's estate, but in a suit

brought upon the purchase money notes it was shown to be the property of the estate of C. A. Rice.

This homestead tract of land, consisting of about 500 or 600 acres as stated, and at the time of the death of C. A. Rice in 1867 occupied by him and his family, consisting of his wife Margaret and children, was valued at about $4 or $5 per acre. This property was taken possession of by Jane Rice, and also a considerable amount of personal property of the estate of Rice, and it was subsequently conveyed by her to W. H. Cundiff, the administrator of the estate of C. A. Rice.

Margaret, the surviving widow of Rice, the testimony shows, took nothing with her of the estate when she removed to Leon County after Rice's death; and there was evidence which authorized the jury to believe that Jane Rice had received the most valuable part of the estate, and to an extent and in an amount sufficient to equal her interest in the community. She took possession of the homestead as the property of C. A. Rice; her assertion of claim to it was based upon the fact that it was his property. There is no evidence in the record that the judgment obtained by Trabue was a fraudulent device of Rice to injure her interests in the community estate. And it would seem to be just that having obtained it, and derived the benefit from it, by reason of the fact that it was the property of Rice, she would be chargeable with it in a settlement with his estate. But if this judgment tended in the remotest degree to shed any light upon the issue of the alleged fraudulent purpose to injure the rights of Jane Rice, or if the fact had been established that it was a fraudulent device upon the part of Rice, we do not think that fact and the subsequent development that it was ascertained to be his property would deprive his estate of the right to have it accounted for by one who appropriated and received it as his property.

The former opinion, already referred to in this case, authorized and directed the submission of the issue whether the claim held by Jane Rice had been paid or satisfied, and the evidence upon this trial fully supported the instruction.

The eighth assignment is that the court erred in charging the jury "that if the claim had been paid, or if by the exercise of reasonable diligence she could have collected the same out of the estate of C. A. Rice, then it would not be a charge upon the land," etc.; because it is "misleading and calculated to impress upon the jury the duty of finding for the defendant," and "supposes the existence of evidence that this claim has been paid," etc.; and "supposes the existence of circumstances such as in law would be sufficient to charge Jane Rice with the duty of subjecting other property to such claim when no such property existed," etc. What has been said with reference to the preceding assignments we think necessarily disposes of this. It may be incidentally observed that no special charges were requested by appellant. It is true that the law did

not require of Jane Rice that she should have resorted to the exercise of reasonable diligence to have collected the claim if it had appeared that the conveyance by C. A. Rice to appellee was made with a fraudulent view of injuring her rights. But to subject the land conveyed to the payment or satisfaction of her claim the law did make it necessary that she or those claiming through her should establish by satisfactory proof that the conveyance was so made or was fraudulent. This not having been done, no injury could have followed from the instruction, which if it had been omitted could not have changed the result.

The ninth assignment is that the verdict is not supported by the evidence, because there was "no evidence that the services rendered by appellee constituted a valuable consideration to the estate," and because the evidence "shows that the services operated as a fraud upon the rights of Jane Rice," etc. If the burden rested upon the appellee to prove that the sale to him by Rice was not fraudulent, which would be a reversal of the rule regulating the burden of proof, and to show that in fact the services were important to the estate, we could not say from the evidence in the record that he had not fully complied with this requirement. It appears that C. A. Rice for several years previous to the war had not paid the taxes on the two-thirds of a league, of which the 1020-acre tract is a part. That in 1866 he employed and contracted with appellee to visit Robertson County, investigate the title, pay all taxes which had accrued, remove all encumbrances existing and adverse claims, and clear the title and possession to the land. Upon the performance of these services at appellee's expense and perfecting the title he was to have 1020 acres of the land. This contract was evidenced by a title bond. Appellee made two visits to Robertson County, a distance of about eighty miles, in 1866 or 1867. At that time there were no public facilities for travel and the trip required about a week. The evidence was that appellee's services under this contract amounted to about $500, and the value of the land at that time was estimated at 50 cents per acre. He had no actual knowledge of the divorce suit, and as C. A. Rice was then living with his wife Margaret appellee had not heard of or did not know Jane Rice. It was in proof that she prior to the conveyance of her interest in C. A. Rice's estate repeatedly declared that appellee having paid the taxes, etc., on the land was entitled to it. There are other facts, not essential to be recapitulated, which with those mentioned fully authorized the finding that valuable services were rendered by appellee as a consideration for the land conveyed to him by C. A. Rice.

What has been said with reference to the evidence as to the amount of the estate received by Jane Rice disposes of the tenth assignment to the effect that there is no evidence showing that the probated claim had been paid or satisfied.

The remaining nine assignments relate to the language used by coun-

sel for appellee in addressing the jury, which it is claimed was prejudicial to the plaintiff's rights. It is stated in the bill of exceptions that defendant's counsel among other things argued before the jury: "To find for defendant because of declarations of Jane Rice to H. W. Moore, and insisted that the same estopped her and her vendees, notwithstanding exceptions had been sustained to this plea;" and that "she should be charged with the homestead notwithstanding the evidence showed she could not be legally so charged;" and that in substance "Cundiff was the party to be benefited and not the estate of Geo. F. Moore; that Cundiff administered on Rice's estate, and desired now to administer on appellee's;" and that "defendant had done business for them" (the jury), and "friendship was the medicine of life." That counsel further argued that "the possession by Rice at his death of the homestead was evidence of title." In signing the bill of exceptions setting forth the foregoing the presiding judge makes the following explanation:

"No objections were made at the time the remarks were made, and the attention of the court not called to same till after the trial, and the court did not feel called upon to interrupt counsel, as the court thought the remarks were made in answer to the opening speech of counsel for plaintiff, and in his reply counsel argued fully to the jury in answer to the remarks complained of. My attention not being called to the remarks at the time I have an imperfect recollection of what was said, but considered what was said as in reply to plaintiff's opening speech."

Adopting the most liberal construction in support of the salutary rule requiring the argument of counsel to be confined to the issues legitimately arising out of the pleadings and proof, we do not think in view of the explanation made by the presiding judge that the judgment should be reversed upon the grounds set forth in the assignments last referred to. If the line of discussion is provoked or replied to in a like manner there can be no just ground for complaint. It is peculiarly the office of an objection or exception of this character that it shall be made at the time of the act complained of, in order that the evil may be promptly remedied, and which it is to be presumed would be unhesitatingly done. But to allow without objection the continuation of such a line of argument would in some cases enable a party to take the chance of a favorable verdict, and which if adverse to him could be set aside upon objections which if promptly made would have resulted in a correction by the court. If as contended by appellant erroneous views of the law may have been expressed by counsel in argument, this of itself would be no grounds for a reversal. There are expressions used in the bill of exceptions, especially with reference to the "defendant's having done business for them" (referring to the jury), which are reprehensible; and if it was shown that they had not been provoked by the other side, and the attention of the court called to them at the time, and were not checked, and if in ad-

dition there was anything tending to show that the verdict was thereby influenced, such language might authorize a reversal. The verdict in this case, however, is not shown to have been so affected in the least. The verdict as it now stands was a contingency indicated in the submission of the issues by the Supreme Court.

We think there is no error in the judgment and that it should be affirmed.

*Affirmed.*

Adopted March 26, 1889.