## MOUND OIL CO. v. F. W. HEITMANN CO.

(Court of Civil Appeals of Texas. Galveston. May 7, 1912. Rehearing Denied June 6, 1912.)

1. TRIAL (§ 420*)—WAIVER OF ERRORS—RULINGS ON DIRECTION OF VERDICT.

Error in refusing to direct a verdict for defendant at the close of plaintiff's case cannot be reviewed, where defendant did not rest its case on this evidence, but introduced its own evidence.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 983; Dec. Dig. § 420.*]

2. SALES (§ 345*)—ACTIONS FOR PRICE—PARTIAL DELIVERY.

Where an indivisible contract for the sale of a quantity of pipe did not provide when it should be delivered or that it should all be delivered at one time, and upon delivery of a part the buyer wrongfully refused to accept it, not placing his refusal on the failure to deliver it at one time, the seller could regard the contract as broken and sue for the contract price of the quantity delivered.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 956–961; Dec. Dig. § 345.*]

3. SALES (§ 359*) — ACTIONS FOR PRICE — QUALITY—EVIDENCE.

In an action for the price of pipe required by the contract of sale to stand a pressure of 1,500 pounds to the square inch, where, although no witnesses testified that the pipe delivered would stand such pressure, there was testimony that it was standard pipe line pipe, and that such standard pipe would stand the required pressure, and, although the pipe delivered was rusty, this was not shown to have affected its suitability for the purpose for which intended, a special finding of the jury that the pipe delivered would stand the pressure required by the contract was supported by the evidence.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 511, 1056–1059; Dec. Dig. § 359.*]

4. APPEAL AND ERROR (§ 1041*)—HARMLESS ERROR—AMENDMENT OF PETITION DURING TRIAL.

Where no objection was made to the filing, in the form of a trial amendment, of an amendment not made necessary by the sustaining of an exception to the petition, the allowance of the amendment was not reversible error, since, although not proper as a trial amendment, it might be allowed by the court in its discretion.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4106–4109; Dec. Dig. § 1041.*]

Error from District Court, Harris County; Norman G. Kittrell, Judge.

Action by the F. W. Heitmann Company against the Mound Oil Company. From a judgment for plaintiff, defendant brings error. Affirmed.

Baker, Botts, Parker & Garwood, of Houston, for plaintiff in error. Hunt, Myer & Teagle, of Houston, for defendant in error.

REESE, J. F. W. Heitmann Company instituted this suit against the Mound Oil Company to recover an alleged indebtedness of $2,893.74 for a lot of iron pipe sold and delivered by plaintiff to defendant. The cause was submitted to the jury upon special issues, and upon the return of their verdict judgment was rendered for plaintiff for the amount sued for, and defendant appeals.

About March 4, 1910, the Mound Oil Company contracted with Heitmann Company for 15,000 feet of 4-inch pipe line pipe to be delivered at the railroad station of Danbury, near its oil well. The price agreed upon was 33 cents per foot. The pipe was to be standard new pipe (by which we understand it was not to be secondhand pipe) to weigh 10.56 pounds per foot, and to stand a pressure of 1,500 pounds to the square inch. Heitmann Company had about 8,000 feet of the pipe on hand at Humble, Tex., and expected to get the other 7,000 feet from Peden Iron Company in Houston. On March 4th Heitmann Company shipped out from Humble, Tex., to Danbury for the Oil Company 320 pieces of the pipe, and on March 5th shipped 97 pieces from Houston. The two shipments amounted to 8,769.1 feet, which, at the price agreed upon, came to the amount sued for and recovered. The evidence does not show that the pipe was to be delivered within any specific time or all at one time. Upon the delivery of the pipe above referred to at Danbury, the same was unloaded, but the Oil Company refused to accept the 320 pieces shipped from Humble, claiming that it was not such pipe as had been ordered, but was an old lot of pipe which it would not use under any conditions. The remainder of the 15,000 feet was never shipped.

The issue presented at the trial, and submitted to the jury, was whether the pipe delivered, and which the Oil Company refused to accept, was such as had been contracted for. The special issues submitted to the jury were: (1) How much 4-inch pipe line pipe was delivered? To which the jury answered, $8,768\frac{11}{12}$ feet. (2) Was or not all of said pipe in good condition; that is, in such condition and of such quality as to be reasonably suited to the purpose of safely conveying oil from the wells to the market? To which the jury replied that it was. (3) They were further asked, in the third question, that if they found that all of the pipe was not such as was contracted for, to say how much of it was, and how much was not. Having answered the second question that all of the pipe was such as was contracted for, the jury properly did not an-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

swer the third question. The fourth question was whether the pipe shipped from Humble was "new standard 4-inch line pipe which was capable of standing 1,500 pounds pressure to the square inch of surface, which question the jury answered, "We find that the pipe shipped from Humble was new standard 4-inch line pipe capable of standing 1,500 pounds pressure to the square inch." We conclude that the facts set out in the answers to the special questions are true. Some of the pipe was shown to have been' taken and used by the Oil Company. As to how much is not shown, nor is it shown with any definiteness that any of the pipe shipped from Humble was used. No objection appears to have been made to the 97 pieces shipped from Houston.· When the plaintiff had concluded its evidence, defendant moved the court to instruct the jury to return a verdict for defendant, which was refused. Thereupon defendant proceeded to introduce evidence in defense, and, after the conclusion of all the evidence, submitted a special charge, instructing the jury to return a verdict for defendant. This charge the court refused to give.

By its first assignment of error appellant complains of the refusal to direct a verdict for it at the conclusion of appellee's evidence, and by the second assignment, of the refusal to give the special charge requested at the conclusion of all the evidence.

[1] In order to avail itself of the error, if any, in the refusal of the trial court to direct a verdict in its favor upon the evidence for appellee, appellant should have rested its case on this evidence. If there is anything in the evidence introduced for appellant to help out appellee's case, it cannot be deprived of the benefit of it by the request to the court to instruct a verdict for appellant upon the evidence for appellee. San Antonio Traction Co. v. Kelleher, 48 Tex. Civ. App. 421, 107 S. W. 64.

[2] The second assignment presenting what is claimed to have been error in refusing to give appellant's requested charge to return a verdict for the defendant after all the evidence was in rests upon a different ground. We cannot agree with appellant's contention as set out in the first proposition, that this charge should have been given for the reason that the undisputed evidence showed that the contract was for the delivery of 15,000 feet of pipe, an entire and indivisible contract, and that only 8,767 feet had been delivered, and for that reason appellee was not entitled to recover. Conceding all that appellant says as to the indivisibility of the contract, the evidence is sufficient to support the claim of appellee that appellee having, in the performance of the ·contract, delivered a part of the pipe, which the jury found to be in all respects such pipe as was contracted for, but which appellant refused to accept,· this unauthorized refusal excused appellee from further

performance. If this be true, the refusal was a breach of the contract on the part of appellant. Appellee had then the right to accept the breach and sue for the contract price of the pipe delivered, which it did. It has not claimed damages for the breach as to the remainder of the pipe not delivered nor tendered. Tiedeman on Sales, § 332; 35 Cyc. 251, and cases cited. There is nothing in the evidence to indicate that it was intended that the entire 15,000 feet was to be delivered at one time. In fact, when appellant refused to accept the 320 pieces shipped from Humble, it said nothing about this, but placed its refusal distinctly and alone upon the condition of the pipe. If the answer of the jury to the fourth question (or as put in the record, question 3½) be true, appellant clearly breached the contract by refusing to accept this pipe, and had no longer the right to insist that appellee should proceed further with ·delivery of the remainder. If the price was fixed by contract, the seller in such case could recover the contract price for the goods delivered, but not accepted. Tiedeman on Sales, supra. None of the several. propositions advanced by appellant under these assignments of error can be sustained, and the assignments are therefore overruled.

[3] The third and fourth assignments of error cannot be sustained. The evidence as to the quality and condition of the pipe delivered was somewhat conflicting. No witness testified in totidem verbis that the pipe was capable of sustaining a pressure of 1,500 pounds to the square inch, still there was testimony that it was standard pipe line pipe, that such pipe would stand such pressure, and the testimony generally was sufficient to support the conclusion that while the pipe shipped from Humble had been on hand some time had been exposed to the weather, and was rusted on the outside, still this was not shown to have affected its capacity to serve the purpose for which the pipe was intended, or its suitability for such purpose. At the instance and request of appellant, the court submitted to the jury the question as to whether the pipe came up to the standard as to pressure; the question being submitted in the language requested by appellant. The jury answered the question in the affirmative, and we cannot say that the evidence does not authorize such finding. The answer to this question really settles the merits of the case.

What we have said disposes also of the remaining assignments of error, which are overruled.

[4] In regard to the eighth assignment of error that the court erred in granting leave to plaintiff to file a trial amendment, the same not being rendered necessary by reason of the court sustaining any exceptions to the petition, and for the other reasons stated, the assignment does not present sufficient

grounds for reversing the judgment. It does not appear from the record at what stage of the proceedings the amendment was filed. It was not in any sense a trial amendment, as defined by the statute, and amendment of the petition in this form should not have been permitted if objected to. Moore v. Moore, 73 Tex. 382, 11 S. W. 396. If plaintiff desired to amend the petition after the announcement of ready, it was within the sound discretion of the court to permit such amendment in a proper case. Railway Co. v. Goldberg, 68 Tex. 685, 5 S. W. 824; Radam v. Microbe Destroyer Co., 81 Tex. 122, 16 S. W. 990, 26 Am. St. Rep. 783; Railway Co. v. Huffman, 83 Tex. 286, 18 S. W. 741.

So far as appears from the record, there was no objection on the part of appellant to the filing of the amendment in the form of a trial amendment.

The assignments of error and the several propositions thereunder have been carefully examined, and we conclude that none of them presents sufficient ground for reversal. They are therefore severally overruled, and the judgment is affirmed.

Affirmed.