SOUTHWESTERN PORTLAND CEMENT
CO. v. BUSTILLOS.  (No. 305.)

(Court of Civil Appeals of Texas. El Paso.
Nov. 6, 1919. Rehearing Denied
Nov. 28, 1919.)

1. APPEAL AND ERROR ⬤⟞500(2)—WAIVER OF EXCEPTIONS BY FAILURE OF TRANSCRIPT TO SHOW ACTION THEREON.

Where there is nothing in the transcript to show that the action of the court on special exceptions to the petition was ever invoked, such exceptions are presumed to have been waived.

2. EVIDENCE ⬤⟞359(3) — PHOTOGRAPHS OF PLACE OF ACCIDENT ADMISSIBLE.

In an action for damages for death, photographs of the place of the accident were properly admitted in evidence.

3. PLEADING ⬤⟞236(1)—ALLOWANCE OF TRIAL AMENDMENTS DISCRETIONARY WITH COURT.

District Court Rule 27 (142 S. W. xix), regulating the filing of trial amendments, does not make the right to file the same dependent upon the contingency that exceptions to a pleading have been sustained; the matter being within the discretion of the court.

4. APPEAL AND ERROR ⬤⟞1042(3)—HARMLESS ERROR IN REFUSAL TO STRIKE TRIAL AMENDMENT.

Error of the court in refusing to strike out a trial amendment on the ground that the record fails to disclose that any exception to the petition was sustained, or that any evidence was excluded on account of the insufficiency of the petition, could not be regarded as reversible error, in view of Court Rule 62a (149 S. W. x).

5. CORPORATIONS ⬤⟞494 — PRIVATE CORPORATION LIABLE FOR ITS OWN NEGLIGENCE.

Though under Rev. St. 1911, art. 4694, a private corporation engaged in the manufacture and sale of cement is not liable for the death of a person caused by negligence of its agents or employés, it is liable for injuries resulting in the death from its own wrongful acts or omissions, as distinguished from the acts or omissions of servants or agents.

6. CORPORATIONS ⬤⟞494—LIABILITY FOR NEGLIGENCE OF VICE PRINCIPAL OF PRIVATE CORPORATIONS.

In action against private corporation for death, the fact that negligent dumping of burning coal and slag into a pit was being done under orders given by a superintendent and vice principal who had been succeeded by another as superintendent and vice principal did not relieve defendant of liability simply by reason of the fact that the superintendent at the time of the accident had not reiterated the orders theretofore given.

7. CORPORATIONS ⬤⟞494 — NEGLIGENCE OF PRIVATE CORPORATIONS IN FAILING TO GUARD DANGEROUS INSTRUMENTALITY.

A pit filled with live coals and hot ashes was an intrinsically and affirmatively dangerous agency, and it was the absolute and nondelegable duty of a private corporation to protect and guard against its dangers those rightfully upon the company's premises; failure to guard being negligence of the company itself, as distinguished from negligence of an employé or servant.

8. NEGLIGENCE ⬤⟞51—DUTY TO GUARD DANGEROUS INSTRUMENTALITY.

A pit filled with hot ashes and burning coal is a dangerous instrumentality to be properly guarded, although located on private property remote from any public highway, where employés and others rightfully upon the premises habitually used them as a pathway.

9. NEGLIGENCE ⬤⟞33(2)—LUNCH CARRIER BECOMING TRESPASSER.

One taking a lunch to an employé of a corporation working on its premises becomes a trespasser if, on his return, he enters on grounds without occasion for doing so.

10. NEGLIGENCE ⬤⟞136(15)—WHETHER PERSON ON PREMISES OF DEFENDANT WAS A TRESPASSER, QUESTION FOR JURY.

Whether deceased, who fell into an unguarded pit, was rightly on the premises for the purpose of delivering a lunch to an employé of defendant, or was simply a trespasser, *held* a question for the jury.

11. NEGLIGENCE ⬤⟞33(2)—PERSONS CARRYING LUNCH TO EMPLOYÉS NOT TRESPASSERS.

Where women and children habitually carry lunches to workmen upon the employer's premises, one going on the premises for such purpose is not a trespasser.

12. NEGLIGENCE ⬤⟞33(2)—CARRIER OF LUNCH NOT TRESPASSER BY NOT LEAVING IN MOST DIRECT ROUTE.

One rightfully upon an employer's grounds for the purpose of delivering lunch to an em-

---

⬤⟞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

ployé does not become a trespasser simply because he does not depart in the most direct and most usually traveled route.

**13. APPEAL AND ERROR ☞1001(2)—REVIEW OF VERDICT.**

It is a matter of no moment what a judge of an appellate court may think of the sufficiency of evidence to establish a fact, in view of the principle that the sufficiency of the evidence to establish the fact is for the jury to determine.

**14. APPEAL AND ERROR ☞216(2)—REVIEW OF INSTRUCTION DEPENDENT ON REQUEST FOR FULLER INSTRUCTION.**

A party cannot complain that an instruction was not as full and complete as might be desired, where he did not prepare and request one in proper form.

**15. NEGLIGENCE ☞136(29) — CONTRIBUTORY NEGLIGENCE OF CHILD QUESTION FOR JURY.**

Whether a 15 year old child was guilty of contributory negligence in using a path along an unguarded pit filled with hot ashes and burning coal *held* a question for the jury.

**16. TRIAL ☞260(1)—REFUSAL OF REQUESTS COVERED BY CHARGE.**

A special charge was properly refused, where the matter therein contained was sufficiently covered by the main charge.

**17. DEATH ☞95(4)—MEASURE OF DAMAGES FOR DEATH OF CHILD.**

The measure of damages recoverable by a mother for death of minor son is the pecuniary loss resulting from his death, including any pecuniary benefit she would probably have received from him during his minority, and the value of any aid she may have had reasonable expectation of receiving from him after reaching majority.

**18. DEATH ☞104(5)—INSTRUCTIONS ON DAMAGES FOR DEATH OF CHILD.**

An instruction on the measure of damages for the death of child, allowing the jury to assess a fair compensation for the pecuniary loss sustained, *held* not improper because it did not specifically authorize a deduction for his maintenance during the remainder of his minority.

Appeal from District Court, El Paso County; A. M. Walthall, Judge.

Action by Ynocenta Bustillos against the Southwestern Portland Cement Company. A judgment for plaintiff, reversed by this court (169 S. W. 638), was reversed by the Supreme Court (211 S. W. 929), and the cause remanded. Judgment of trial court affirmed.

Burges & Burges, of El Paso, for appellant. W. M. Peticolas, M. W. Stanton, and Jno. F. Weeks, all of El Paso, for appellee.

HIGGINS, J. This suit was brought by Ynocenta Bustillos to recover damages for the death of her son, Fernando Bustillos, aged 15 years, whose death it is alleged resulted from appellant's negligence. Verdict

was returned and judgment rendered in appellee's favor for $2,500.

Upon appellant's premises there was a pit or depression in the ground into which it dumped hot ashes, burning coal, and slag. It was alleged that this pit was negligently maintained and unguarded, and on June 2, 1911, the deceased, while passing said pit upon a pathway about 2½ feet distant therefrom, slipped and fell into the same, receiving burns which caused his death; that in using the pathway deceased was performing an errand for one of the employés at defendant's plant, that is, carrying a lunch. The allegations are set out in full in an opinion of the Supreme Court in this case reported in 211 S. W. 929, to which we refer for a complete statement of the allegations of the petition.

The facts in this case, as disclosed by the evidence in so far as they are pertinent to the questions presented by this appeal, will be sufficiently indicated in the course of the opinion.

The first eight assignments complained of the action of the court in overruling general and special exceptions to the petition. The sufficiency of the petition as against general demurrer has been upheld by the Supreme Court in the opinion rendered as aforesaid.

[1-4] In so far as the special exceptions are concerned, there is nothing in the transcript to show that the action of the court upon the same was ever invoked, and in this condition of the record they are presumed to have been waived. It is assigned as error that the court erred in admitting in evidence certain photographs of the pit and its immediate location. Mr. Weeks testified that the photographs were correct and reflected conditions as they existed before the camera. The objections urged relate to the probative force of the photographs, rather than to their admissibility, and they were properly admitted in evidence. During the progress of the trial and before submission to the jury, plaintiff filed a trial amendment. Error is assigned to the refusal of the court to strike it out; the proposition being advanced that the record fails to disclose any exception to the petition to have been sustained or that any evidence was excluded on account of insufficiency of the petition, and there was therefore no authority for the filing of the amendment. Appellant filed a number of special exceptions to the sufficiency of the petition, and, while it is true the record does not disclose any action by the court upon its exceptions, yet appellant in its brief asserts that they were overruled. The trial amendment contains allegations which would meet certain of the special exceptions. The language of rule 27 (142 S. W. xix) for the government of the district court regulating the filing of a trial amendment does not make

the right to file the same dependent upon the contingency that exceptions to the original plea have been sustained. According to the appellant's own theory, the exceptions had been presented, decided, and overruled. It was within the discretion of the court to permit the filing of the trial amendment. Moore v. Moore, 73 Tex. 382, 11 S. W. 396; Railway Co. v. Huffman, 83 Tex. 286, 18 S. W. 741; Texas Co. v. Earles, 164 S. W. 28; American, etc. v. Ray, 150 S. W. 763. In any event, the filing of the same is not regarded as reversible error. Rule 62a (149 S. W. x).

[5] Complaint is made of the action of the court in overruling defendant's motion for an instructed verdict in its favor for the reason that there was no evidence showing the defendant company to be such corporation as would be held liable in damages for the death of any person. The defendant was a private corporation engaged in the manufacture and sale of cement. The cases cited by appellant do not support the propositions which it advances. They simply hold that under the second subdivision of article 4694, Rev. Stat., such a corporation is not liable for the death of a person caused by negligence of its agents or employés. But "a private corporation is liable under the statute for injuries resulting in death from what may be deemed its own wrongful acts or omissions, as distinguished from the acts or omissions of its servants or agents." Fleming v. Texas Loan Agency, 87 Tex. 238, 27 S. W. 126, 26 L. R. A. 250; Lipscomb v. Ry. Co., 95 Tex. 5, 64 S. W. 923, 55 L. R. A. 869, 93 Am. St. Rep. 804.

In this connection various assignments question the sufficiency of the evidence. It is urged that the maintenance of the pit in its dangerous condition was not shown to have been due to the negligence of a vice principal of the company with authority to represent it in its corporate capacity; that O. J. Binford was the defendant's vice principal, he acting for it with respect thereto and the only representative of the company for whose negligence it could be held responsible; and that Binford was not connected with any negligent act.

[6] Binford succeeded Gilbert as superintendent and vice principal of the company on May 20, 1911. The yard foreman, Duke, testified that the hole was being filled and refuse dumped therein under orders given by Gilbert during his incumbency. In the light of this evidence, there seems to be no basis for the contention that the dangerous agency is not shown to have been produced by the act of a vice principal. The fact that Binford did not reiterate the orders theretofore given does not affect the question. Besides, there is ample evidence of a circumstantial nature to show that the hole was being filled and maintained with the knowledge and approval of Binford. In fact, it would be difficult to escape such conclusion.

[7] Furthermore, this pit filled with live coals and hot ashes was an intrinsically and affirmatively dangerous agency. As such it was the absolute and nondelegable duty of appellant in some appropriate way to protect and guard against its dangers those rightfully upon the company's premises while passing the same. A failure in this respect is the negligence of the company itself, and it cannot shift responsibility or escape liability therefor. Jacksonville, etc., v. Moses, 63 Tex. Civ. App. 496, 134 S. W. 379, 385; Temple, etc., v. Halliburton, 136 S. W. 585; Cameron, etc., v. Anderson, 98 Tex. 156, 81 S. W. 282, 1 L. R. A. (N. S.) 198; Cameron, etc., v. Anderson, 34 Tex. Civ. App. 105, 78 S. W. 8; Smith v. Humphreyville, 47 Tex. Civ. App. 140, 104 S. W. 495; Missouri, etc., v. Ballard, 53 Tex. Civ. App. 110, 116 S. W. 93; Kampmann v. Rothwell, 107 S. W. 120; Moore v. Kopplin, 135 S. W. 1033.

The sufficiency of the evidence is further questioned upon the ground that the pit complained of was on the private property of defendant, was remote from any public highway or from any private way through defendant's premises, and no duty devolved upon defendant to maintain its premises free from all dangers, and defendant was not guilty of negligence in using its premises as it did.

[8] This may be disposed of by the observation that there is evidence in the record of employés and others rightfully upon the premises, habitually passing to and fro along and beside the dummy line, adjacent to the pit, using same as a pathway in going to and returning from the plant. It was defendant's duty to such persons to maintain its grounds in safe condition or properly guard and protect against dangerous places therein.

It is further questioned upon the ground that the deceased was a trespasser upon the private premises of defendant, and that it was under no obligation to maintain its grounds free from danger to trespassers, and deceased, being such, accepted the grounds as he found them. In this connection, appellant contends that the undisputed evidence shows deceased had taken a lunch to one Quirino Reyes and was returning; that Reyes upon that date was working at the reservoir 1½ miles beyond the plant and grounds where the pit was situate; that the county road was the direct route for the return of deceased from reservoir to his house, and he had no occasion whatever in so returning to enter upon the private premises of defendant at its main plant; furthermore, whether he had carried a lunch to the reservoir or the main plant, the accident is shown to have occurred between 4 and 5 o'clock in the afternoon, and under no possible circumstances did he have any right upon the premises at that hour.

[9] It must be conceded he was undoubtedly a trespasser if he was returning from the delivery of a lunch to Quirino Reyes at the reservoir, because he had no occasion whatever in so doing to enter upon the grounds at the main plant. But a careful consideration of the evidence leads to the conclusion that it is debatable whether he was in fact returning from the reservoir or the main plant.

Francisco Maldanado testified that Fernando carried lunch to Quirino Reyes, the day he was burned; but there is nothing to indicate upon what information he based such statement.

Reyes Bustillos, brother of deceased, testified he had carried lunch to Quirino Reyes; that deceased had told him so. It was shown by several witnesses that Quirino Reyes was working at the reservoir on day of accident.

On the other hand, Thomas Negrite, who was with deceased at time of accident, testified they had gone to the cement plant together and Bustillos left a lunch bucket; that a woman named Juana Delfine asked deceased to carry the lunch to a man at the plant, and he did so; that Bustillos took it inside going into the entrance between the clinker bins and plant; witness remained outside and did not see to whom the lunch was delivered; Juana Delfine gave him the lunch about 11:30 a. m.; they remained at plant 2 or 3 hours waiting for the bucket to take it back; during this time they were on the side of a hill adjacent to the plant; when they got the bucket back, they started home, and in passing the pit Bustillos slipped in and was burned. The testimony of Negrite in this connection is as follows:

"We were walking by the hole when young Bustillos fell in. He fell into the hole right here. We had just about reached the hole when he fell in. We were walking by there going home. We had gone over to the cement plant and left a bucket of lunch. I don't know where young Bustillos carried the lunch, because I remained outside when he went in. In going to the cement plant with the lunch we went along here, along the track. We were both together in going back home. Bustillos was on the side of the hole. He was walking on this side of the track. Bustillos was walking between me and the hole. As we walked along by the hole, he fell in the hole. When I saw him, he was hollering for me to pull him out. * * * I went with young Bustillos to carry a lunch to the cement plant. He carried the lunch from the house of the woman called Juana. Yes, Juana Delfine was her name. She called to him, young Bustillos, and brought a bucket, and said it was for a man at the plant. We were passing by and she called to Bustillos. He went inside and I remained outside. He went into the plant by the entrance between the clinker bins and the plant. I did not hear her say anything about who to take it to. That was at half past 11 in the morning. Yes, I went up to the plant with Bustillos, and he took it inside. I did not see the man he delivered it to, as I remained outside of the plant. We then started back home, and when we got even to the hole he fell in. * * * It was half past 11 or thereabout when we were taking this lunch to the cement plant. We remained at the plant about two hours or three. We were waiting for the bucket, to bring it back, and we did bring it back. We had been to the side of the hill, at the edge of the factory, during that time. We went over there to wait for the man to get through with his lunch. We waited there two or three hours, I don't remember. When the man gave Bustillos the lunch bucket, we started back home. * * *"

[10, 11] It will thus be seen that the testimony of Negrite clearly raises an issue as to whether the lunch was carried to Quirino Reyes at the reservoir or some one else working at the main plant. If it was to the main plant, then deceased could not be regarded as a trespasser, for it is abundantly shown that women and children habitually and constantly carried daily lunches to the men working at the company's plant and delivered same upon the premises. Under the evidence it must be held that such practice was authorized by the company. If so, one upon the premises for such a purpose was rightfully there and could not be regarded as a trespasser. See opinion of Supreme Court in this case cited supra.

[12] There is evidence in the record, too, that there was a pathway passing the pit which was used to some extent by parties in going to and from the plant. It is true, such was not the most direct route for deceased to have traveled from the plant to his home and was not the one most used; but, if he was rightfully upon the premises, he would not lose his status as such and be lowered to that of a naked trespasser, simply because he did not depart in the most direct route for his home and along the one most usually traveled.

As to the fact that the accident is shown to have occurred some time after the noon hour, Negrite explains this circumstance by saying that while waiting for the lunch bucket they went over on a hillside at edge of company's property and spent two or three hours there. They then got the bucket and started back home. While this explanation may not seem entirely satisfactory to this court, yet the jury accepted it, and it was within its province to do so.

[13] So it is seen, the status of deceased as a trespasser or as one rightfully upon the premises resolves itself into the question of whether he took a lunch to Quirino Reyes at the reservoir or to some one else working in the main plant. The evidence falls very far short of satisfactorily establishing the latter fact to the mind of this court, but the issue is clearly raised by Negrite's evidence, and we are not at liberty to disregard the same and set aside the jury's finding thereon.

The remarks of Judge Neill, in Ry. Co. v. Murray, 99 S. W. 144, are so apropos in this connection that we quote as follows:

"It is a matter of no moment what a judge of an appellate court may think of the sufficiency of evidence to establish a fact in view of the principle, enacted by the Legislature and enforced by the courts, that the sufficiency of the evidence to establish a fact is for the jury to determine. If the principle is not extended beyond its logical scope, it is no business of his; nor should he suffer any qualms of conscience because a verdict cannot be .squared with his own rule of justice."

[14] The thirtieth assignment complains of the ·definition of a "vice principal" in a special. charge given by the court. It is objected that it was calculated to mislead the jury and make them believe that any foreman of any department having control or direction of other employés of the company was a vice principal for whose negligence defendant would be responsible. The charge as criticized gives a correct general definition of a vice principal. Abilene Cotton Oil Co. v. Anderson, 41 Tex. Civ. App. 342, 91 S. W. 607, and, while it may not be as full and complete as might be desired, yet it is' not subject to the criticism made. If a more complete charge upon the subject was desired, appellant should have prepared and requested one in proper form. Not having done so, it cannot complain. The charge upon the subject which it requested was objectionable and properly refused, for several reasons.

[15] The forty-fifth and forty-sixth assignments must be overruled. It cannot be said as a matter of law that deceased was guilty of contributory negligence in passing the pit. ⋅ The twenty-third assignment is overruled. It would have been quite impossible for the court to have stated the pleadings without referring to tracks of certain railway companies, who were originally made parties defendant. Furthermore, such . reference could not have had any confusing or misleading influence.

The objection to the court's charge under twenty-fifth assignment is regarded as without merit.

[16] Defendant's special charge, the refusal of which is made the basis of the thirty-sixth assignment, was properly refused, since the matter therein contained was sufficiently covered by the main charge.

[17, 18] The court's charge upon the measure of damage is criticized. ·The jury was instructed, if they found for plaintiff, that—

She was "entitled to recover such sum as you may believe and find, from the evidence to be the pecuniary loss resulting to her from the death of said Ferdinando and not otherwise; the sum so assessed should as a present payment, be a fair compensation for the pecuniary loss, if any, thus sustained. The plaintiff is not restricted by law to the value of the pecuniary benefit she would probably have received from deceased during his minority, but the term ·includes besides the value of such aid, if any, as plaintiff may have had a reasonable expectation of receiving from the deceased, after he reached 21 years, of age, if any."

It is objected that it does not authorize any deduction to be made for the maintenance of deceased during the remainder of his minority. In estimating the pecuniary loss resulting to plaintiff from the death of her son, the jury would necessarily take into consideration such expense of maintenance, and the charge ·does not exclude same. It is a correct charge. Ry. Co. v. Shiflet, 98 Tex. 103, 81 S. W. 524; Id., 37 Tex. Civ. App. 541, 84 S. W. 248.

The assignments are very numerous, and in passing upon them we have not in all instances specifically referred to same, but it is believed that the views expressed dispose of all questions raised.

Affirmed.

WALTHALL, J., did not participate in the decision of this appeal.