DAVIS, Director General, v. KENNEDY.*
(No. 2020.)

(Court of Civil Appeals of Texas. Amarillo. Oct. 25, 1922. Rehearing Denied Nov. 29, 1922.)

I. Master and servant ⬳270(16)—Trainmaster's order held inadmissible.

In an action for injuries to a railroad employee in a bunk car struck by a string of cars negligently moved by a switch engine without warning him, a letter written by the trainmaster to those in charge of the movement of trains, including the outfit of which the bunk car was a part, requiring the O. K. of such employee before the movement' of such outfit "out of the yard or from any other point," held not admissible; the letter having no reference to a mere temporary movement within the yards for convenience in switching, and therefore being inapplicable.

2. Master and servant ⬳270(15), 274(6) — Testimony as to custom of warning bunk car occupants of switching movements held admissible on issues of negligence and contributory negligence.

In an action for injuries to ,a railroad employee in a bunk car struck by a string of cars negligently moved by a switch engine without warning him, testimony as to custom of warning occupants of bunk cars before running into car for switching or other purposes held admissible on issue of whether failure to warn plaintiff constituted negligence and on issue of whether he was guilty of contributory negligence in not keeping himself informed of switching movements.

3. Evidence ⬳185(1)—Admission of secondary evidence without notice to produce primary evidence held error.

In an action against railroad for injuries to employee, the admission of testimony as to contents of printed rules or bulletins of the railroad, though the railroad had not been notified to produce such printed rules, held error.

4. Evidence ⬳123('11)—Statement of foreman as to cause of other cars running into bunk car, made immediately after the accident, held admissible as res gestæ.

In action for injuries to railroad employee sustained while in bunk car struck by string of other cars, in which it was claimed that the railroad was negligent in running such other cars against the bunk car and in not warning the employee that the other cars were to run into the bunk car, testimony as to statement of foreman in charge of the switching immediately or within a few minutes after the car was struck as to the cause of the accident held admissible as a part of the res gestæ.

5. Witnesses ⬳379(2) — Testimony as to statements made by witness immediately after accident admissible to impeach testimony as to cause of accident.

Where foreman in charge of switching testified during a trial as to the cause of an accident, testimony as to statements made by him immediately after the accident, as to the

cause thereof, was admissible for impeaching purposes.

**6. Damages ⬅⮞216(8)—Refusal, to charge that allowance for reduction of earning capacity should be restricted to such as would reasonably and probably result from injury held error.**

In employee's action for injuries, in which there was evidence that, about two weeks after such injuries were sustained, the employee had another accident and sustained other injuries, refusal to charge that any allowance for reduction of earning capacity in the future should be restricted to such as would "reasonably and probably result from the injury" held error.

**7. Trial ⬅⮞350(2)—Refusal to submit special issues, the answers to which would have furnished no basis for a judgment, held proper.**

Refusal to submit special issues, the answers to which would have furnished no basis for a judgment, held proper.

**8. Trial ⬅⮞352(1)—Refusal to submit special issue based on assumption that jury would disregard instruction given held proper.**

In an action for injuries, in which the court expressly instructed the jury not to allow damages for other injuries sustained about two weeks after plaintiff sustained the injuries on which the action was based, refusal to submit special issue as to what portion of the damages allowed were sustained as a result of the subsequent injuries held proper; the issue being based on the assumption that the jury would disregard instruction not to allow damages sustained by reason of subsequent injuries.

**9. Trial ⬅⮞350(8)—Refusal to submit special issue as to whether all injuries claimed were proximate result of accident sued for held proper, evidence being conclusive that plaintiff sustained some injury.**

In action for injuries, in which there was conclusive evidence that the plaintiff sustained some injury as a result of the collision on which the action was based, refusal to submit special issue as to whether the injuries which plaintiff claimed to have sustained were the sole proximate result of a fall sustained about two weeks subsequent to the date of the collision held proper.

**10. Trial ⬅⮞118—Argument of counsel to jury in disregard of instruction held improper.**

In an action for injuries sustained in a collision, in which there was evidence that plaintiff sustained further injuries in a fall about two weeks subsequent to the collision, and in which the court instructed the jury that plaintiff was not entitled to any compensation with respect to the extent that his injuries were rendered greater on account of the subsequent accident, argument of counsel in disregard of such instruction that, under certain conditions which he asserted to exist in the case, the defendant would be liable for aggravation of injuries resulting from the subsequent accident, held improper, since the instruction, whether correct or not, was the law of the case.

**11. Appeal and error ⬅⮞925(3)—Improper argument of counsel held not ground for reversal in view of instructions.**

Improper argument of counsel to jury, in which he argued that, under certain conditions which he asserted to exist, the defendant would be liable for any aggravation of the injuries resulting from accident other than that on which the action was based, though the court had previously instructed the jury to the contrary, held not ground for reversal, since it will not be presumed that the jury violated the instructions and followed the law as announced by the attorney rather than that given in the charge.

**12. Trial ⬅⮞131(2) — Improper argument should be called to court's attention before retirement of jury.**

Improper argument should be called to the attention of the court before the retirement of the jury.

Appeal from District Court, Potter County; Henry S. Bishop, Judge.

Suit by J. E. Kennedy against James C. Davis, Director General of Railroads. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Thompson, Barwise, Wharton & Hiner, of Fort Worth, and Turner & Dooley, of Amarillo, for appellant.

Barrett & Works, of Amarillo, for appellee.

BOYCE, J. Appellee, Kennedy, brought this suit against James C. Davis, Director General of Railroads, representing the federal government, to recover damages sustained by him while in the service of the Fort Worth & Denver City Railway Company, at a time when it was being operated by the government. The Director General appeals from a judgment in appellee's favor, awarding him damages in the sum of $3,000.

On November 3, 1919, plaintiff, Kennedy, was foreman and engineer, operating what is called in the record a "clam shell" outfit. This outfit consisted of three units: The first, an engine, built on eight-wheel trucks, for the purpose of furnishing power to operate a steam shovel, and in connection with the engine was the crane and other necessary machinery; second, a flat car, called a "lazy car," on which the crane rested when the shovel was not being operated; and, third, another car, called the "bunk car," which furnished living accommodations for those operating the outfit. These units could be all coupled together and also coupled into the regular equipment of the railway. The clam shell was used in loading coal, gravel, etc., and was moved from place to place on the line of road wherever loading was to be done. The engine could be geared to the wheels on which it was built so as to move the outfit on its own power, though

---

⬅⮞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

only slowly. When the clam shell was to be moved in the regular trains, the gearing of its engine with its truck wheels was disconnected, as otherwise the engine might be ruined. At the time of the alleged injury, the clam shell was at work in the yards at Amarillo, loading coal from the ground to coal cars. During the noon hour the plaintiff and his fireman were seated at a table in the bunk car, eating their noon meal, when a string of cars, moved by a switch engine, struck the boarding or bunk car with considerable violence, which was sufficient to tear loose cabinets, etc., attached to the walls of such car, and to turn over and move unattached objects in the car. The defendant's switchman, testifying for the defendant, admitted that—

"We just coupled into them a little harder than usual, I happened to hit his car as hard as I did because we were going upgrade, and loads too, and coal on the track; the brake don't hold very good."

Plaintiff's back was hurt by coming in contact with an iron cot. Plaintiff had no warning of the approach of the cars. The negligence alleged was: First, a general charge of negligence "in running said train of cars against the car in which plaintiff was taking his lunch at the time he was injured; second, negligence in failing to warn plaintiff that said cars were going to be run against the boarding car at such time; and, third, that such act was in violation of the regulations, requiring that plaintiff be consulted and approve of any proposed move of his outfit." The jury found that the defendant was guilty of negligence in running the train of cars against the boarding car at the time, and also guilty of negligence in failing to warn plaintiff of the proposed movement of the boarding car. It also found that the injury sustained was not the result of either assumed risk or contributory negligence on the part of the plaintiff.

[1] The first three propositions present a claim of error in the admission of the following letter, written by the defendant's trainmaster to those in charge of the movement of the railroad trains, including the clam shell, and dated July 12, 1919:

"Several days ago the clam shell was ordered from Amarillo to Magenta pit to be sent out on the local at 5 a. m. J. E. Kennedy did not get this notice, and the clam shell was sent out without any one in it and without the gears being stripped. Fortunately the cuff worked off in the end of the gear and the machine was not ruined, but it resulted in two days' delay to ballast loading. Hereafter you will see that Mr. Kennedy gives his O. K. on this machine before it is moved out of the yard or from any other point."

We do not think this letter was admissible. The movement contemplated was evidently not a mere temporary movement within the yards for convenience in switching. The movement referred to is "out of the yard or from any other point," and the purpose of the order was, not to protect the operatives of the clam shell, but to protect the machine itself from harm, due to lack of preparation for such movement and to save the possibility of it being moved to some distant point without the operatives accompanying it, thus incurring loss of time in its operation.

[2] We think the testimony as to the custom, or what was usual, in reference to warning the occupants of boarding cars before striking them with other cars for switching or other purposes, was admissible and could be considered as a circumstance in determining whether the defendant was guilty of negligence in running against the car on this occasion without such warning. T. & P. Ry. Co. v. Behymer, 189 U. S. 468, 23 Sup. Ct. 622; 47 L. Ed. 906; Coates v. B. C. R. & N. G. Ry. Co., 62 Iowa, 486, 17 N. W. 762 (2); Steffenson v. C., M. & St. P. Ry. Co., 51 Minn. 531, 53 N. W. 800; Thompson on Negligence, vol, 6, § 7882; Taylor v. White (Tex. Civ. App.) 156 S. W. 349; Id. (Tex. Com. App.) 212 S. W. 657. Justice Holmes, in the case of T. & P. Ry. Co. v. Behymer, supra, said:

"What usually is done may be evidence of what ought to be done, but what ought to be done is fixed by a standard of reasonable prudence, whether it usually is complied with or not."

In the case of Coates v. B. C. R. & N. G. Ry. Co., supra, it was held that evidence of an order and custom of the railway company to block all frogs on its line was admissible as a circumstance to be considered in determining whether the failure to block the particular frog at which plaintiff was injured was negligence. The appellant cites M. K. & T. Ry. Co. v. Tarwater, 33 Tex. Civ. App. 116, 75 S. W. 937, and C., R. I. & G. Ry. Co. v. Pavillard (Tex. Civ. App.) 187 S. W. 998, in support of his contention. The first case we do not consider in point. One statement in the latter case does tend to support the appellant's position. Whether or not the holding in that case may be distinguished from our conclusion, we are convinced, on reason and authority, that in this particular case the evidence in question is admissible on the issue of defendant's negligence. The defendant pleaded that the plaintiff was guilty of contributory negligence in not keeping himself informed of switching movements in the vicinity of the clam shell so as to protect himself against injury in case his car was coupled into. Certainly the evidence was admissible on the issue of contributory negligence thus tendered.

[3] The admission of the testimony of the witness Curtis that the printed rules or bulletins of the defendant railway provide that

"the boarding cars were not to be moved, and no cars were to be kicked in against such boarding cars without first notifying the parties in the cars" was error. The printed rules or bulletins were the best evidence, and there was no proper predicate laid for the production of secondary evidence. There was no notice to the defendant to produce such printed rules, unless the pleading was sufficient for that purpose, and the plaintiff's pleading of a regulation evidently had reference to that contained in the letter referred to by us in the proposition first discussed.

[4, 5] The plaintiff's testimony, to the effect that when he went out of the boarding car and accosted the engine foreman Morrison, in charge of the switching, he (Morrison) said "that he was not to blame for it; that he had told the two switchmen to set them to the lead, and they had come in on my track instead of going to the lead like they always did," was, we think, admissible. In the first place, we think it was admissible as part of the res gestæ. It occurred immediately, or within a few minutes at the most, after the car was struck, and as soon as plaintiff was able to get out. Railway. v. McMeans (Tex. Civ. App.) 188 S. W. 692. But, in any event, it was admissible for impeaching purposes. Morrison had testified for the defendant that he came in on this track and was coupling onto the bunk car purposely under orders for the purpose of switching the track, and that this was customary and usual, and the statement made to the plaintiff was in direct conflict with his testimony at the trial. Proper predicate had been laid for the impeaching testimony.

The comment made by the trial judge at the time of overruling the objection to the evidence just referred to, we think, falls within the provision of article 1971, and was not proper. The comment was evidently intended only for counsel and as explaining the ruling the court was about to make, and the court, on objection being made, promptly informed the jury that the remark was not for them and should not be considered. As we reverse the case on other grounds, we need not determine whether this instruction made the comment harmless. The charge could not very well obliterate from the minds of the jury their knowledge gained from the remark as to the judge's opinion of the spontaneity of the statement made by Morrison. See American Express Co. v. Chandler (Tex. Com. App.) 231 S. W. 1085.

The issue as submitted authorized the jury to make allowance for cash payment in advance of damages that would be sustained in the future on account of diminished earning capacity, and was in the form usually employed in submitting such issues. C. T. & N. W. Ry. Co. v. Gibson (Tex. Civ. App.) 83 S. W. 866; Railway Co. v. Taylor (Tex. Civ. App.) 134 S. W. 819. So that we do not think there was any error in the refusal to give in connection therewith the requested instruction, made the basis of the eleventh, twelfth, and thirteenth propositions.

[6] The issue of damages submitted and the instructions given, in connection therewith clearly confined the jury to an award of only such damages as resulted from the injury sustained as a result of the collision on November 3, 1919, and expressly required the jury not to take into consideration in their assessment of the damages any injuries or aggravation of injuries resulting from any other injuries which occurred to plaintiff on November 18, 1919. The charge also eliminated the consideration of any injury, the result of other conditions existing prior to the injury on November 3, 1918. These charges fully safeguarded the rights of the appellant as to the matters referred to in the fifteenth, sixteenth, and seventeenth propositions, and we do not think such propositions point out any error. However, we think there was error in refusing to charge the jury that any allowance for reduction of earning capacity in the future should be restricted to such as would "reasonably and probably result from the injury." Lentz v. City of Dallas, 96 Tex. 258, 72 S. W. 59; H. & T. C. Ry. Co. v. Fox (Tex. Civ. App.) 166 S. W. 693; Fort Worth & Denver City Railway Co. v. Taylor (Tex. Civ. App.) 162 S. W. 967.

[7-9] Appellant requested the trial court to submit special issues: (1) As to whether plaintiff's ability to earn money in the future would with reasonable probability be decreased as a result of the alleged injury; (2) whether plaintiff's alleged injury will with reasonable probability be permanent; (3) whether the fall which plaintiff subsequently sustained on November 18, 1919, increased any existing injury; (4) whether the injuries which plaintiff claimed to have sustained were the sole proximate result of a fall sustained on or about the 18th day of November, 1919; (5) what portion, if any, of the damages allowed under the court's submission of the case were sustained as a result of the injury of November 18, 1919; (6) whether the employees doing the switching with the cars which struck the bunk car should have known, in the exercise of ordinary care, that plaintiff was probably in position to be injured as a result of striking the bunk car. Propositions 21 to 27 are based on the refusal to submit these requested issues. In this connection, we should say that there is evidence to the effect that plaintiff, on November 18th, while yet in bandage in protection of the injury to his back sustained as a result of the collision on November 3d, slipped and fell while at work in installing some grates in the clam shell engine; that this fall tore loose the bandages and may have aggravated the injury already sustained. An answer to a number of these issues would

furnish no basis for a judgment, and it would have been improper to have submitted them. The jury were told in explicit terms not to allow any damages for the injury or aggravation of previous injuries resulting from the fall of November 18th, and were asked to assess the damages sustained as a proximate result of the injury of November 3d; it would have been obviously improper then to have assumed that the jury were going to disregard these instructions and require them to say how much of the damages they had thus assessed in violation of the court's instructions. The evidence is conclusive that plaintiff sustained some injury as a result of the collision of November 3d, and the submission of issue No. 4, as above stated, would, for this reason, not have been proper. We think, also, that the special instructions given in connection with the submission of the issue of damages sufficiently safeguarded appellant's interest in respect to any defense as to such matter. The issue of knowledge would have been as to an evidentiary fact entering into a consideration of the issues of negligence as submitted.

[10-12] As we have before stated, the court instructed the jury:

"That in no event would plaintiff be entitled to any compensation with respect to the extent that his said injuries, if any, were rendered greater, if they have been, on account of said occurrence of November 18, 1919."

Complaint is made under the twenty-eighth proposition that, notwithstanding such instruction, one of plaintiff's counsel, in the opening argument, was permitted to argue that under certain conditions, which he asserted to exist in the case, the defendant would be liable for any aggravation of the injuries resulting from the occurrence of November 18th. No objection was taken to the argument at the time, and the attention of the court was not called to it until the matter was presented in a bill of exception, some two months after the trial was ended and after the adjournment of the court for the term. Whether the instruction was correct or not, it was the law of the case as far as the trial in question was concerned, and the argument made in disregard thereof was improper. Taylor v. McNutt, 58 Tex. 71; St. Louis & Southwestern Ry. Co. v. Hall (Tex. Civ. App.) 92 S. W. 1079—in point by analogy only. But we do not think the case should be reversed on this account. We hardly think that we should presume that the jury violated the instructions of the court and followed the law as announced by the attorney rather than that given in charge by the court. Moore v. Moore, 73 Tex. 382, 11 S. W. 401. And we are not inclined to regard with favor the method of presenting objections to the improper argument as made under the circumstances of this case. As we have already said, the argument was made in the opening speech in the case. Defendant's counsel had ample opportunity, while the trial was still in progress, to call the court's attention to the matter without interrupting the argument and without running the chance of discrediting himself before the jury, which is sometimes said to be an excuse for failure to call the court's attention to an improper argument at the time it is made. Texas Central Railway Co. v. Pledger, 36 Tex. Civ. App. 248, 81 S. W. 755. The authorities are not altogether in accord in their statement of the rule as to the necessity of calling the court's attention to the argument or making objections at the time. The cases of Willis & Bro. v. McNeill, 57 Tex. 465, and Home Life & Accident Co. v. Jordon (Tex. Civ. App.) 231 S. W. 802, seem to support appellant's view of the rule. Other authorities announce the rule to be that it is necessary that objection be made at the time, or at least that the court's attention be in some manner called to the improper argument. Moore v. Moore, 73 Tex. 382, 11 S. W. 401, a decision of the old Commission of Appeals, approved by the Supreme Court; G., C. & S. F. Ry. Co. v. Brown, 16 Tex. Civ. App. 93, 40 S. W. 613; American Freehold Land & Mortgage Co. v. Brown, 54 Tex. Civ. App. 448, 118 S. W. 1109; Fordtran v. Stowers, 52 Tex. Civ. App. 226, 113 S. W. 635. In the last three decisions writs of error were denied by the Supreme Court. In this particular case the court could unquestionably, at any time before the retirement of the jury, have eliminated any possible harm that might have resulted from the improper argument, and we are of the opinion that the defendant, knowing of the error, and failing to take any steps to have it remedied, ought to be held to have taken his chances on the result.

Since we have decided to reverse the case on other grounds, it does not become necessary to discuss the proposition as to the excessiveness of the verdict. We overrule such propositions as we do not specifically mention.

Reversed and remanded.