State of Iowa, Appellee, v. Harry West, Appellant.

APPEAL AND ERROR: Reservation in Trial Court—Constitutional
1   Questions. Constitutional questions will not, either in civil or crim-
inal cases, be considered when raised for the first time on appeal.

De Graff, J., dissents.

EVIDENCE: Opinion Evidence—Age of Person. Expert opinion evi-
2   dence is competent on the issue whether a person on trial for statu-
tory rape is over 25 years of age.

De Graff, J., dissents, on the present record.

RAPE: Evidence—Solicited Opportunity as Corroboration. Adequate
3   corroboration may be found in testimony tending to show that the
accused was present at the very place where the immoral act took
place, in connection with other testimony, aside from that of prose-
cutrix, also tending to show that the accused had solicited a third
party to arrange with prosecutrix for a ''date'' for the accused,
and that such ''date'' was for an immoral purpose.

Faville, De Graff, and Vermilion, JJ., dissent, on the present
record.

*Appeal from Cedar District Court.*—John T. Moffit, Judge.

January 16, 1923.

Opinion on Rehearing April 1, 1924.

DEFENDANT was indicted for the crime of rape. The jury
found him guilty of assault with intent to commit rape, and
judgment was pronounced thereon. The defendant appeals.—
*Affirmed.*

*L. E. Casterline,* for appellant.

*Ben J. Gibson,* Attorney-general, *John Fletcher,* Assistant
Attorney-general, *Arthur Lund,* County Attorney, and *C. O.
Boling,* for appellee.

PRESTON, J.—The indictment was under Chapter 192, Acts of the Thirty-ninth General Assembly, which reads:

"If any person ravish and carnally know any female of the age of 16 years or over, by force or against her will, or if any person under the age of 25 years carnally know and abuse any female child under the age of 16 years, or if any person over the age of 25 years carnally know and abuse any female under the age of 17 years, he shall be imprisoned in the penitentiary for life or any term of years."

The indictment is under the last subdivision. It charges, in substance, that defendant is over 25 years of age, and that he did carnally know and abuse Ellen Ghrist, a female under the age of 17 years.

Three grounds are relied upon for reversal: First, that the statute is unconstitutional; second, that there is no competent evidence to prove that defendant is over 25 years of age, for that such fact may not be shown by opinion evidence; and third, that the testimony of prosecutrix is unsupported by any corroborative testimony, as required by Section 5488 of the Code.

1. The question as to the alleged unconstitutionality of the statute is raised for the first time in this court. We have held a number of times that this may not be done. *State v. Wilson*, 124 Iowa 264, 266; *State v. Perkins*, 143 Iowa 55, 60; *State v. Ross*, 186 Iowa 802, 803; *State v. Meyer*, 180 Iowa 210; *State v. Burch*, 195 Iowa 427. Most of these cases are criminal cases. Following our prior cases, it was so held in this case in the original opinion. *State v. West*, 191 N. W. 368 (not officially reported). Appellant cites us to *State v. Gibson*, 189 Iowa 1212, 1216, which makes a distinction between civil and criminal cases, and holds that, in a criminal case, the question may be raised for the first time on appeal. Our prior cases were evidently overlooked in the *Gibson* case. Such cases were not overruled, or even referred to, and no cases are cited in support of the holding, except *State v. Daniels*, 90 Iowa 491, and *State v. Potter*, 28 Iowa 554, where it was said that:

"We could not, in a criminal case, affirm a judgment when it appears that the defendant is charged with no offense against

1. APPEAL AND ERROR: reservation in trial court: constitutional questions.

the laws, though he should in no stage of the proceedings, either in this court or in the court below, object on that ground."

It would seem that this would assume, in advance of its determination, that a law is unconstitutional and invalid. Clearly, there is no presumption that statutes enacted by the legislature are unconstitutional. Had a statute already been declared unconstitutional in prior cases, then the rule announced in the *Daniels* case might have force. Such a situation is not presented in the instant case. In the *Gibson* case, it is conceded that, in a civil case, it is generally held that the unconstitutionality of a statute may not be first raised in the appellate court, citing a number of cases, some of them Iowa cases; also, 3 Corpus Juris 710, which reads:

"In applying the general doctrine that questions not raised below will not be considered on appeal, it is held that the constitutionality of a statute cannot be first questioned on appeal unless the case comes within some exception to the general rule; and this is especially true when the constitutionality of a statute depends on questions of fact, as well as of law [as where there are] irregularities in its passage."

It is not pointed out nor shown that, this case comes within any of the exceptions to the general rule. In so far as we have been able to discover from an examination of the authorities in other jurisdictions, every state except New Mexico, Massachusetts, and Colorado, and perhaps Washington, holds that the question must be raised in the lower court, or it will be deemed waived. The following (all criminal cases) hold squarely that such a question will not be considered on appeal unless it is so raised. *State v. Hertzog*, 92 S. C. 14 (75 S. E. 374, 377) ; *State v. Hennessy*, 44 La. 805 (11 So. 39) ; *People v. Luby*, 99 Mich. 89 (57 N. W. 1092) ; *Roberts v. State* (Tenn.), 247 S. W. 101; *State v. Caldwell* (Mo. App.), 245 S. W. 626 ; *People v. Esposito*, 296 Ill. 535 (129 N. E. 846) ; *Scoggins v. State*, 24 Ga. App. 677 (102 S. E. 39), a murder case; *State v. Hefton* (Mo.), 213 S. W. 442; *Ellis v. State*, 74 Fla. 215 (76 So. 698) ; *Mayor of Jersey City v. Thorpe*, 90 N. J. L. 520 (101 Atl. 414), holding that this is so even though the attorneys stipulated that the question might be considered; *State v. Mack*, 92 Vt. 103 (102 Atl. 58) ; *City of Topeka v. Kersch*, 70 Kans. 840 (79 Pac. 681, 80

Pac. 29), where the court said that a defendant was content to take his chances with the jury without raising the constitutional question; *State v. Swift & Co.*, 270 Mo. 694 (195 S. W. 996); *State v. Smith*, 35 R. I. 282 (86 Atl. 890); *State v. Kelley*, 17 Wyo. 335 (98 Pac. 886). See, also, 17 Corpus Juris 53, where it is said:

"The constitutionality of a statute upon which a criminal prosecution is based will not, according to the weight of authority, be considered on appeal unless the question as to its constitutionality was raised in the court below" (citing a large number of cases, some of which we have before referred to).

The note cites cases from Indiana, Texas, and Alabama, in addition to the cases we have before cited. See, also, 3 Corpus Juris 689, where it is said:

"Subject to a few exceptions, * * * the rule is of almost universal application that questions of whatever nature not raised and properly preserved for review in the trial court will not be noticed on appeal."

The note cites hundreds of cases from different jurisdictions. The exceptions thereto are found at pages 750, 752, and 764, and we think do not apply to this case. In *Olander v. Hollowell*, 193 Iowa 979, 984, a criminal case wherein the death penalty was inflicted, a statute was held constitutional, partly on the ground of lapse of time and acquiescence, and for that reason, it was held, it could not be questioned. If a defendant does not choose to raise the question, it would seem that it is one of the questions he can waive. As bearing on this question, see *State v. Browman*, 191 Iowa 608, 632.

There is no pleading or proof that defendant is a citizen. The trial court was not given an opportunity to pass upon the question. We have a statute, Code Section 5371, under procedure in criminal cases, which provides that:

"All the provisions relating to mode and manner of the trial of civil actions, report thereof, * * * and *in all other respects,* apply to the trial of criminal actions."

The rules of evidence are the same. Code Section 5483.

We are of opinion that no distinction can be made between civil and criminal cases, and that we cannot overrule our own criminal cases before cited and allow the rule to stand in civil

cases, leaving two opposite rules on the same proposition. In order that there may be harmony in the decisions, the *Gibson* case is, therefore, overruled.

2. Doubtless the purpose of the new statute is a degree of protection of young boys and young men under some circumstances. While this purpose is proper enough, in actual practice it is likely to prevent a conviction in some cases, as where the person charged is near the age of 25 years, because of the difficulty, under such circumstances, of proving his age. Under this indictment, it is necessary for the State to prove the age of the defendant, as well as that of the prosecutrix. Ordinarily, there is no difficulty in proving her age. It may be quite difficult sometimes to prove the age of a defendant. He cannot be compelled to testify thereto. In the instant case, defendant was a stranger in the community, and his residence and parentage were unknown. The record of his birth was not accessible, and there is no evidence of any admission by him as to his age. As said, if a person is close to the age of 25, a little under or a little over, it might be difficult to prove. There are cases holding that, where the age of an infant is in issue, it may not be shown by opinion evidence. Clearly, if a man were 75 years of age, that rule would not apply. Often age is provable by evidence which is, in a sense, hearsay. The testimony of a party as to his own age is necessarily hearsay, and his age may be proved by others of the family, as family history or tradition. A qualified expert can testify that a house is an old house, and give his opinion as to its age. This is so as to many other things.

In this case, the age of defendant was sought to be shown by the opinions of three witnesses, experienced in such matters. They give their opinion that he is about 30 or 35 years of age or more. They state the facts upon which they base their opinions. Doctor Hoffman, engaged in the general practice of medicine for many years, enumerates the facts upon which he bases his opinion, some of which are that defendant has lost the ruddy complexion of youth; his skin is thick and a little massive; his hair is getting thin on the top and about the temples; he has wrinkles on the forehead and on either side of the eye and on the side of the nose and about the neck; his upper lip is thick-

*2. EVIDENCE: opinion evidence: age of person.*

ened, as if he might have worn a mustache, and his eyes are sunken; his general appearance is that he is a man past the age of 30. Witness says he has no doubt about it; thinks defendant is between 30 and 35 years of age. Doctor Jenks gives his experience and observations, and gives his opinion that, between the wide extremes, defendant is between 30 and 40 years old; has no doubt that he is at least 30 years of age. He gives the facts upon which he bases his opinion: that he was in the service, in hospital work, and during all that time, and in his practice generally, has had occasion to observe people as to their ages; that he does not recollect having seen, in his practice, persons that have the line from the nose and mouth who were not 25. Doctor Van Meter, engaged in general practice since 1887, says he always observes the age of a person in making a diagnosis. He states the facts upon which he bases his opinion: his observation; defendant's general appearance, as compared with other men of different ages.

Without discussing in detail the different cases on this subject, we think the evidence is competent. See 22 Corpus Juris 560; *State v. Bernstein,* 99 Iowa 5, 10; *Commonwealth v. O'Brien,* 134 Mass. 198; *DeWitt v. Barly,* 17 N. Y. 340; *State v. Grubb,* 55 Kans. 678; *Louisville, N. A. & C. R. Co. v. Frawley,* 110 Ind. 18; *Monahan v. Roderick,* 183 Iowa 1; *Reininghaus v. Merchants' Life Assn.,* 116 Iowa 364; Jones on Evidence (2d Ed.), Section 401, Notes 42 to 45, inclusive, and cases therein cited; Ibid., Section 300, Note 21; 41 L. R. A. 451 (family Bible entries as evidence of age); *Priddy v. Boice,* 9 L. R. A. (N. S.) 718, 723 (census returns); 17 Cyc. 98; 16 Cyc. 1123; *Grand Lodge v. Bartes,* 69 Neb. 631 (98 N. W. 715) (family history).

3. It is argued that there is no corroboration of the prosecutrix, as required by the statute. It appears from the evidence that the defendant was operating a show at a fair near Tipton,

3. RAPE: evidence: solicited opportunity as corroboration.

from August 31 to September 2, 1921, inclusive, and that, at the same time and place, another show, or doll rack, was being conducted by the Bassett brothers. Defendant slept in the Bassett tent, arranging his bed on the ground. Prosecutrix voluntarily, for aught that appears, stayed and slept in the same tent during the time in question,—slept on cots between the two Bassetts, on Wednes-

day night. Prosecutrix was over 16 and under 17 years of age. She testifies that the intercourse was had with her by the defendant on Thursday night, September 1, 1921, in the night, at about 1 o'clock; that it occurred in the tent owned by Bassett brothers, and at the fair grounds; that she saw defendant on the fair grounds August 31st, at different times on that date; that she got to the fair grounds about noon; that she saw defendant in his own place there in the afternoon, saw him in Bassett brothers' tent at different times; that he stayed there all night in the tent Wednesday night and Thursday night; that she stayed there all night. She says further that, on the date in question, she was working at Fitzpatricks', and that, when not working there, she was at home with her father and mother, who lived about two miles south of Tipton, and that Fitzpatrick lived about a half a mile from Tipton; that she was working for Fitzpatrick on August 31st; that on that date she went to the Tipton fair grounds, and attended the fair; that defendant had been drinking that day; that she smelled it on his breath; that whisky had been brought into the tent; that defendant woke her up by getting on top of her, etc., and that, when he did that, she tried to get away; that he held her, and told her he would not hurt her; that it did hurt; that she told him to quit, and he said he was not going to; that she left the fair grounds about 2 o'clock Friday; that she does not know the time exactly; that she made the complaint to Sheriff Barclay Friday evening. As to the time she made complaint to the sheriff, her testimony differs somewhat from that of the sheriff, who says she made the complaint that afternoon about 2 o'clock, and told him that defendant had sexual intercourse with her. About 5 o'clock Friday afternoon, Doctor Jenks made an examination of her sexual organs. He testifies that he found some laceration of the hymen, etc.

The defendant did not testify, and only two witnesses were introduced in his behalf. Argo testifies that, on September 1, 1921, Thursday morning, "I brought Louie Bassett and Ellen Ghrist to Tipton, and at that time, she made this statement to me, in substance: 'Louie Bassett is my husband.'" Doubtless this was in jest, or to shield herself or her lover.

The other witness for defendant was Louis Bassett, who

testified that he was at the Tipton fair, which was held on the last two days of August and the first two days of September; that he had a doll rack concession at the Tipton fair; that he had the dolls in a tent; that the tent is 16x10, the long way east and west.

"West wanted me to make a date for him with Ellen Ghrist,—he asked me to fix it up. I asked her about a date with him,—did not specify any certain kind of a date. Saw Ellen and West together in the east end of the tent on Wednesday night. West told me he wanted me to fix it up for him with the girl. There were two cots in the Bassett tent on Wednesday night, August 31st. Ellen Ghrist slept all night on the two cots in our tent, with my brother and myself. West slept in the opposite end of the tent on the ground that night. On Thursday night, our cots were in the same position as they were on Wednesday night, and West's bed was in the same place. He went to bed there Thursday night between 12 and 1 o'clock. I was in the tent all of Thursday night after midnight, until morning. Ellen again slept on the cots with my brother and I all of Thursday night after midnight, and I was in position with respect to her so that, if any commotion which involved her had occurred, it is probable that I would have known about it. She did not leave our cots for any purpose on Thursday night at any time between 12 o'clock and the next morning. She was already in bed on the cots with my brother and myself when West came into the tent on Thursday night. Do not know whether West spoke to her or not on Thursday night after midnight. West slept on some blankets and quilts in the front part of the tent. We had no room in the back part for the cots. The curtain that was in the tent was removed when we went to bed. West brought some whisky in the tent Wednesday night. I drank some whisky Wednesday night, and believe I took a drink on Thursday morning."

We think that the evidence other than that of the prosecutrix pointed out the defendant as the person who committed the crime, and that it was sufficient to take the case to the jury, and to support the verdict. This answers the requirements of the statute as to corroboration. The crime may be established by the testimony of the prosecutrix alone, if the jury believe her

story,—that is, that the act was committed by someone. There was corroboration of her testimony by other witnesses that she made complaints, and there was an examination of her person by a physician. These circumstances corroborate her story that the crime was committed by someone. But these last mentioned circumstances, of course, do not constitute the statutory corroboration. The evidence other than the evidence of prosecutrix shows beyond question that defendant was present at the very time and place that the sexual intercourse took place.

Ordinarily, mere opportunity is not sufficient corroboration,—that is, where a man and woman are alone together in ordinary social intercourse. But we find much more than that in this case. Where a party creates a situation by which he has the opportunity, and for the purpose of having sexual intercourse, it may be sufficient corroboration. While it appears that the result of Bassett's solicitation of prosecutrix, on behalf of defendant, for a date, was not communicated to the defendant, the evidence clearly shows, and without dispute, that this matter was in his mind, and defendant was there present in the tent. It may be true that young people do use the same expression about making a date for a theater, and the like. In that sense, it would be harmless and innocent; but here, the parties were entire strangers,—he a side-show follower or proprietor, and she a young country girl. Under such circumstances, the expression ''a date,'' and defendant's request that Bassett should fix it up for him, could mean but one thing, and that the very thing that was done. She had no occasion to be in the tent, except by solicitation. Defendant created the opportunity by sleeping in the Bassett tent, instead of in his own, and for the purpose of having sexual intercourse with her. At least, the jury could have so found. It is a proper inference that defendant and the Bassetts were in collusion. This is shown by her presence in the Bassetts' tent; by her sleeping on their cots; by the solicitation by one of the Bassetts of prosecutrix, at the request of the defendant, for a date; by conversations by one of them with defendant in jail; and by their drinking together. Naturally, Bassett claims that he heard no commotion. It was not necessary that there should be any commotion or resistance, at her age.

The fact that the corroborating evidence was furnished by the defendant does not make it any the less corroboration. Bassett's evidence was offered, no doubt, to show that there was no commotion, and that, therefore, defendant did not have intercourse with prosecutrix. It is not claimed by the defendant, or in his behalf, that the Bassetts or either of them had intercourse with the girl. There is no direct evidence that they did. It may be that they all had intercourse with her. There can be no doubt, under this record, that prosecutrix was in the tent at the time in question at the instigation of the three men, and that all four were there for an immoral purpose. Suppose the State was claiming and seeking to prove circumstantially, without the testimony of prosecutrix, that all three of the men had intercourse with the girl,—could there be any question that such was the fact, and that they had her in the tent, or that she was in the tent, for that very purpose? We think there could be no reasonable doubt about it. If this is so, then clearly the circumstances would sufficiently indicate that this defendant, as one of the three, had intercourse with her. Particularly is this true as to this defendant, since the undisputed evidence shows his solicitations, and that he created the opportunity. This being so, it corroborates her story, and tends to point out the defendant, even as against the other two, as the one who had intercourse with her, as she says. Under the entire record, we think that the circumstances referred to and the evidence outside that of prosecutrix meet the statute as to corroboration. The circumstances were proper to be considered as corroboration, and the sufficiency thereof was for the jury.

4. A rehearing was granted, and further arguments invited on the question as to whether the constitutional point could be first raised on appeal. This has already been referred to. Counsel for defendant has argued the constitutional question again, and at length, and with the citation of many authorities. Since we have held in a prior division of the opinion that appellant is not entitled to a review of the constitutional question, nothing further need be said on the question. The judgment is— *Affirmed.*

ARTHUR, C. J., EVANS and STEVENS, JJ., concur.

FAVILLE and VERMILION, JJ., concur except as to the division in regard to corroboration.

DE GRAFF, J., dissents.

DE GRAFF, J. (dissenting).—I cannot concur with the views expressed by the majority on any one of the three grounds upon which an affirmance is based, to wit: (1) That the unconstitutionality of the statute under which the instant indictment is drawn cannot be raised for the first time on appeal; (2) that the testimony of the prosecutrix is corroborated, as required by Section 5488 of the Code; and (3) that there is competent or sufficient evidence proving or tending to prove that the defendant is over 25 years of age, which is a material allegation of the indictment.

I. It is urged by the State, and sustained by the majority opinion, that the unconstitutionality of the statute in question cannot be raised for the first time in this court. We have heretofore, and in but one case, squarely and definitely ruled this proposition, and the present ruling law is found in *State v. Gibson,* 189 Iowa 1212. It is there said:

"If the fact that the indictment charges no crime can be first urged on appeal, it surely follows that, if the statute under which prosecution is had is, in law, no statute, then the defendant is prosecuted for something that does not constitute a crime, as much so as when he is convicted under an indictment which fails to charge a crime."

No act is a crime in Iowa unless made so by statute. Although we borrow definitions of crime from the common law, there are no common-law crimes in this state. If a criminal statute is violative of the Constitution, it was never legally enacted, and the prosecution of a person thereunder is the prosecution for an act that does not constitute a crime. The foundation of a criminal cause rests upon the validity of the statute on which the prosecution is based. *Commonwealth v. Hana,* 195 Mass. 262. It is the inherent right of a court to see that constitutional provisions are observed in criminal procedure, and this right ought to be exercised for the protection of the citizen at all times. In *Schwartz v. People,* 46 Colo. 239, the constitutionality of the law upon which the indictment was based was

not directly challenged or passed upon in the trial court, but was urged for the first time on appeal. It is said in opinion:

"Since that question is now urged, and since it is fundamental, the duty of the court to meet and dispose of it seems plain; for it must be that, if the law is void, a conviction or sentence under it may not be upheld or enforced, and the defendant should go free. If the law upon which the prosecution is based is unconstitutional, then it is no law, and there can be no offense for the supposed violation of its terms. * * * The very foundation of the cause rests upon the validity of the statute, and in which alone is found the power and authority of the court to act at all."

Surely no judgment can stand in greater need of correction than one rendered in a criminal cause for an act defined as criminal in violation of constitutional principles. It is generally held that an appellate court may take notice on its own motion at any time of the want of jurisdiction *ratione materiæ*, and set aside an appealed judgment, or that an act charged as a crime is unknown to the law may be raised for the first time on appeal. See *State v. Daniels,* 90 Iowa 491; *State v. Potter,* 28 Iowa 554; *State v. Tieman,* 32 Wash. 294.

The validity or justice of the rule stated in the *Gibson* case, supra, is not contrary to any rule heretofore affirmed by this court.

In *State v. Wilson,* 124 Iowa 264, the unconstitutionality of a statute was intimated by appellant, and it is held that he who alleges the unconstitutionality of a statute must point out the particular provision of the Constitution that is violated. The statute was previously declared constitutional. The apparent conflict in *State v. Perkins,* 143 Iowa 55, is found in these words:

"If the constitutionality of a statute is a question properly presented to the court for determination, the court's duty is plain. But, until the question is so raised, we think the statute should be obeyed."

In the *Perkins* case, the question involved is that the district court had no jurisdiction to fix an absolute term of imprisonment under the Indeterminate Sentence Act. *In Olander v. Hollowell,* 193 Iowa 979, the unconstitutionality of the statute

involved was predicated on alleged irregularities in the adoption
of an amendment to the Constitution of Iowa, under which the
County Attorneys' Information Law was enacted by our state
legislature. No other point was properly before the court for
determination, and the decision is not relevant to the proposition
involved in the case at bar.

Whether or not the constitutionality of a statute can be
raised for the first time in this court depends, under my point
of view, whether the statute upon which the indictment is
drawn is subject to attack, and not a statute that is brought
into the case incidentally or collaterally. This is illustrated in
our own case of *State v. Burch,* 195 Iowa 427, 433, in which the
constitutionality of Section 5299 of the Code of 1897 was raised
for the first time in this court. It involves the distinction, if
any, between principal and accessories, which was a collateral
matter. It did not involve the crime charged or the statute
upon which the indictment is based.

There is a lack of harmony in the decisions, but many of the
cases from other jurisdictions cited in support of the State's
contention fall short of determining the point under discussion.

In *State ex rel. Vandiver v. Burke,* 175 Ala. 561, the appeal
was from a judgment in quo warranto. The administration of
criminal law is not involved. It is said:

"This court will never, on appeal, investigate or inquire
into the constitutionality of statutes in civil cases where the
questions were not raised or passed upon below, unless the
statute is necessary to the jurisdiction of this court or to that
of the court below."

In *Rushton v. State,* 58 Fla. 94, the record did not involve
the constitutionality of a criminal statute, but the constitution-
ality of an act creating the trial court, concerning which act the
court said: "We are not now concerned and express no opinion."
This is also true in *Moore v. State,* 126 Ga. 414. In *People v.
Luby,* 99 Mich. 89, the defendant was indicted for keeping a
saloon open on Sunday, and contended on appeal that the act
of the legislature under which he was indicted was invalid be-
cause, when passed, it was read by its title only. It was held
that such objection will not be considered when raised for the
first time in the Supreme Court. In *City of Topeka v. Kersch,*

70 Kans. 840, the defendant was arrested for illegal sale of liquor on an oral complaint, as provided by statute. The regularity of defendant's arrest was not challenged in the police or the district court. He waived the technical averments of a written complaint. The court held that a conviction without written complaint would not impair appellant's constitutional rights, as an arrest upon view of a crime committed in the presence of a police officer without warrant is not a violation of Section 15 of the Bill of Rights of the Constitution of Kansas, which guarantees against unreasonable searches and seizures.

In *Fritz v. State*, 178 Ind. 463, the defendant offered evidence on the question of his insanity, and the court instructed in relation thereto. The authority to raise the issue and try it in the cause was based on a legislative enactment. On appeal, the State urged for the first time the unconstitutionality of the act. It is said:

"These questions we decline to determine for the reason that in the trial of the cause the court and the parties assumed the section in question to be a valid enactment and to permit appellant to present the issue of his sanity under his general plea of not guilty."

The Supreme Court felt bound to act on the theory of the trial court as contained in the evidence and the instructions, and so said.

In *Roberts v. State* (Tenn.), 247 S. W. 101, the constitutional question attempted to be raised for the first time in the Supreme Court involved an act providing a method for the selection of a grand jury. The statute upon which the indictment was drawn was not in question. The matter suggested to the Supreme Court for the first time was collateral and incidental. The cause was reversed.

*State v. Hertzog*, 92 S. C. 14 (75 S. E. 374), involves the constitutionality of a statute which, when enacted, did not, as alleged, express properly the title of the act; and this point, not having been raised in the court below, cannot be reviewed on appeal. This is the only point in the decision relative to the proposition in issue, and this does not challenge the principle for which I am contending: that, if the statute which defines the crime and upon which the indictment is based is unconstitutional,

it is the province of any court having proper jurisdiction to so hold in the first instance.

In *State v. Caldwell* (Mo. App.), 245 S. W. 262; the defendant filed a motion for new trial and motion in arrest of judgment, and in both motions challenged for the first time the constitutionality of the act under which the information was filed.  The court held that the defendant did not properly raise and save the question in the trial court.  This is one case that squarely holds that "a constitutional question must be raised at the earliest opportunity possible in the trial court, and if not so raised, the question is waived.  This rule has been held to apply to criminal as well as civil cases" (citing *State v. Gamma,* 215 Mo. 100).  The court further says that it has never been able to see why a person convicted of a crime may not raise for the first time the question of the unconstitutionality of a statute under which he is convicted, in a motion in arrest of judgment. I agree.  If this is not presenting a question to the trial court, what does it do?  The Missouri appellate was bound to follow the Supreme Court of that state, but did so with great reluctance.

In *State v. Bildstein,* 44 La. 778 (11 So. 37), the defendant for the first time on his appeal challenged the indictment; but the challenge did not go to the substance of the charge against the accused, but simply against its form.  The court held that, had the accused desired to avail himself of any possible advantage that might accrue on that account, he should have filed a motion to quash the indictment, and, having failed so to do, the defect, if any, was cured.  The case is not decisive of the point under consideration.

In *Ellis v. State,* 74 Fla. 215 (76 So. 698), it is held that, when the constitutional validity of a statute on which a prosecution is based is not raised in the trial court, but is merely suggested in the briefs filed in the appellate court, and the law is not patently in conflict with organic law, its validity will not be considered.  There was a motion to quash the indictment, one of the grounds of which was that the language of the indictment charged no offense against the laws of Florida.  The error assigned on overruling the motion to quash suggests that the

statute is unconstitutional. This was held not to be sufficient, "as the statute is not patently in conflict with organic law."

In *State v. Kelley,* 17 Wyo. 335 (98 Pac. 886), it is held that the constitutionality of a statute will not be passed on unless the decision is necessary to the determination of the pending controversy, or, as expressed, "unless the necessity therefor in the case pending clearly appears."

In *State v. Mack,* 92 Vt. 103 (102 Atl. 58), the defendant was prosecuted under the fish and game law relating to private preserves. The defendant suggested on appeal a constitutional question, but it was not raised on the trial, and the Supreme Court of Vermont refused to consider it. In opinion it is said:

"After verdict and before judgment, the respondent moved in arrest. The motion was overruled, and the respondent excepted. The grounds of the motion were either too general to be considered, or related to claimed defects which, if real, were cured by verdict, or else they related to exceptions in the prohibitive statute that did not constitute a material part of the definition of the offense denounced."

In *Mayor of Jersey City v. Thorpe,* 90 N. J. L. 520 (101 Atl. 414), the defendant was convicted for the violation of an ordinance concerning the littering of the streets with refuse matter. For the purpose of the review, the court held that certiorari, and not writ of error, was the proper remedy, it being a review from a legislative agency, under the practice statute of New Jersey. It is also said that appellant has no right to argue in an appellate court constitutional questions based upon a stipulation entered into for the purpose of such appeal, and raising for the first time a question that was not raised in the court below (citing *State v. Shupe,* 88 N. J. Law 610 [97 Atl. 271]). In the *Shupe* case it is held that:

"The doctrine that a party need not be heard as to a question which could have been, but was not, raised in an intermediate court of appeals, is subject to these limitations, namely: First, where the question goes to the jurisdiction of the subject-matter * * *, and second, where a question of public policy is involved."

A few courts of last resort have held that the unconstitutionality of a statute in a criminal case cannot be urged for the

first time on appeal. *State v. Smith,* 35 R. I. 282 (86 Atl. 890) ; *Hendry v. State,* 147 Ga. 260 (93 S. E. 413) ; *People v. Esposito,* 296 Ill. 535 (129 N. E. 846) ; *State v. Gamma,* 215 Mo. 100.

In the case at bar, the statute itself, upon which the indictment is predicated, is under question, and I do not feel that the reasons urged are sufficiently weighty to cause this court to recede from the position taken in *State v. Gibson,* supra.

II.   Does the evidence in this case establish the essential ingredients of the crime charged, beyond a reasonable doubt? The verdict can be supported only upon inference and presumption.

At the close of plaintiff's testimony, and upon the conclusion of all the testimony, a motion for directed verdict on behalf of the defendant was made, on the following primary grounds: (1) That the testimony of the prosecutrix stands unsupported by any competent corroborative testimony, as required by Code Section 5488; (2) that there is no competent evidence to prove that the defendant is over 25 years of age, and without such affirmative evidence, the State has failed to establish one of the necessary and indispensable elements of proof.   These motions were overruled by the court.   The jury returned its verdict finding the defendant guilty of assault with intent to commit rape, and thereupon, defendant filed his motion for new trial, predicated on the grounds, amplified to a certain extent, that were urged in the motions for a directed verdict.   This motion was overruled, and judgment was entered.

A defendant in a prosecution for rape or for assault with intent to commit rape cannot be convicted upon the testimony of the prosecutrix unless she is corroborated by other evidence tending to connect the defendant with the commission of the offense.   This is statutory.   Code Section 5488.

The record is devoid of corroborative testimony, within the purview of the statute, and a defendant under such circumstances is entitled to a directed verdict on an indictment charging rape.   Not a line of the record as recited in the majority opinion corroborates the prosecutrix, tending to connect the defendant with the commission of the offense charged.   She made no complaint to anybody.   Nothing that she said constitutes *res gestæ.*   Her father and brother took her to the sheriff's

office, but not by reason of anything that she had told them. She had been away from home and her place of work for several days, and this was a sufficient reason, we may assume, for inquiring into her whereabouts. While she was before the sheriff, some 12 or 14 hours after the alleged intercourse, she told him that the defendant had sexual relations with her. That she did or did not have intercourse with either of the Bassett brothers is wholly immaterial to any issue in this case, and the trial court properly sustained objections when the State attempted to prove intercourse with one of the Bassetts. The majority opinion attempts to predicate corroboration of her testimony upon the testimony of the sheriff, to whom she stated the material fact in issue. Clearly, her statements and declarations as testified to by others could have no greater weight than the testimony of the prosecutrix under oath to the same effect. It is not corroboration, and we so held in *State v. Egbert*, 125 Iowa 443.

Nor does the fact that the defendant was present at the very time and place corroborate the prosecutrix in any sense. This court has repeatedly held that mere opportunity is not corroboration. The defendant West did not create the situation. The undisputed record shows that he was there upon the invitation of the Bassetts. Why the prosecutrix was there is not shown, but it is sufficient for the issue involved to say that the defendant did not bring her there. Some emphasis is placed upon the fact that one of the Bassetts testified that West wanted him to "make a date" with the girl. One of many inferences could be drawn from this statement, and his request may have been wholly innocent. This court is not justified in imputing a criminal motive to the defendant, and no accused person should be convicted upon mere inference or presumption. These parties were strangers to the prosecutrix when she voluntarily came upon the show grounds and voluntarily stayed around and in the Bassett tent, sleeping there at night. Undoubtedly the defendant became acquainted with her on August 31st. The prosecutrix was not in the tent by the solicitation of the defendant, or even the Bassetts, under the record before us, nor is it fair to the defendant to say he created the opportunity by sleeping in the Bassett tent. He was there upon the invitation of the Bassetts, and this invitation had no reference whatsoever to the

presence of the prosecutrix, and was extended before her volun-
tary appearance in the tent.

From this fact the majority opinion states that defendant
created the opportunity by sleeping in the Bassett tent, and
infers that his purpose in accepting the invitation was to have
sexual intercourse with her. A man's liberty is not worth much
if he may be incarcerated in the penitentiary for the period of
his natural life by accepting an invitation to sleep upon the
premises of the inviting party when, forsooth, it is discovered
subsequently that a young woman is also impliedly the recipient
of a similar invitation. A further inference is drawn from
these facts by the majority that the defendant and the Bassetts
were in collusion, and as a final inference,—a presumption based
upon a presumption,—that the girl was there for an immoral
purpose, and that this final inference constitutes corroboration.
In other words, the State, by indirect impeachment of its own
and most material witness, predicates the corroboration of its
witness, and asserts that this is the corroboration within the
meaning of the statute.

The prosecutrix may have had sexual intercourse a dozen
times with the Bassetts while she was in the Bassett tent with-
out tending to corroborate her story that the defendant had
intercourse with her.

The prosecutrix, who was over 16, but under 17, years of
age, testified that the defendant had sexual intercourse with her
in the Bassett tent about 1 o'clock A. M. on Friday, September
2, 1921. She remained in the tent after the alleged intercourse,
sleeping the balance of the night, and rising at 8 o'clock A. M.
She remained at the tent until 1 P. M. on Friday, and then went
to the home of Mr. Fitzpatrick, where she was employed. Her
father and brother, who were apparently looking for her, found
her there sometime Friday afternoon, but she did not acquaint
them with the alleged incident at the tent. Her father then took
her to Tipton, to the office of Sheriff Barclay. She does not
remember that she immediately told the sheriff that West had
abused her, nor does she remember just when she told the sheriff;
but sometime during the afternoon, in a conversation with the
sheriff, she did tell him that West had had sexual intercourse
with her. About 5 o'clock on that afternoon, she was taken to

the office of Dr. Jenks, who made an examination of her sexual organs. He testified that he found some laceration of the hymen, and that there was a putrefactive odor, and in his opinion the cause of the condition was of recent origin.

"Q. What would be the least possible time that the conditions you refer to could have developed, in your estimation? A. Oh, two days—48 hours."

Upon redirect examination in reference to the same matter, the doctor testified:

"It would have to be 48 hours old anyway, and if the act of sexual intercourse occurred at 1 or 2 o'clock Friday A. M., you would hardly get it in that time—you would hardly get any putrefaction in that time."

The testimony of the medical witness as to the physical condition of her private parts simply indicates that, in all probability, a crime had been committed, but it in no wise affords corroborating evidence tending to connect the defendant with the commission of the offense, but, on the contrary, disproves the fact. As bearing upon the proposition, see *State v. Egbert*, 125 Iowa 443; *State v. Sells*, 145 Iowa 675.

In the instant case, the evidence is insufficient as corroboration of the prosecutrix, and as matter of law, a verdict of guilty of the offense charged or of the included offense should not, in my judgment, be sustained, upon this record.

III. No evidence was produced on the part of the State bearing upon the age of the defendant except the opinion testimony of three medical witnesses, who based their opinions upon their observation of the defendant in court. The testimony of Dr. Hoffman is typical of the testimony introduced, and we quote the record:

"Q. Do you observe the appearance of Harry West, the defendant, who sits here at the table? (Defendant objects as immaterial. Overruled, and exception.) A. I do. Q. And basing your opinion on your observation of Mr. West, his appearance, and whatever other facts you may care to take into consideration concerning his appearance, you may state to the jury what, in your opinion, the age of Mr. West now is. (Defendant objects on the ground that opinion testimony as to age is absolutely incompetent, immaterial, and irrelevant, and also

that the defendant is present in court, and is himself the best evidence. Also, that the witness has not been qualified as an expert, and has failed to state any facts or examination made by him, upon which to base any opinion. Overruled, and exception.) A. I have not made any examination of the gentleman; but from my opinion, looking at him, I should judge him to be between 30 and 35 years of age. (Motion to strike answer for same reasons was overruled, and exception).''

The doctor then proceeded to state facts based on his observation of the witness, and upon which he predicated his opinion. These matters included the defendant's complexion, his skin, his hair, his wrinkles on the forehead and on either side of the eye, his eyes, and his general appearance. Upon cross-examination, the doctor stated that a person incarcerated in jail for 90 days would become paler; that the best means of gauging the age of a human being is by the appearance of the individual, condition of his heart, his arteries, and internal organs; that he had not carefully observed many men between the ages of 25 and 35; that, when he called upon a patient, he asked the age; and that there is no definite standard of judging a man's age.

Dr. Jenks, a medical witness for the State, testified, on cross-examination:

''You find some men who from their facial expression appear to be much over 25 years of age, but in reality are under that age.''

Dr. Van Meter testified, on cross-examination:

''It is absolutely true that a person may appear to be a great many years older than he really is, in many cases,—it depends entirely upon how fast a man has lived, and what the nature of his dissipations were. Before I could fix a man's age within a reasonable limit, I would want to know something about his previous life.''

This opinion evidence of the medical experts is challenged by appellant. His objections are twofold: (1) Its competency, and therefore its admissibility over objection, in the first instance. (2) Its sufficiency to prove an essential element of the crime charged, beyond a reasonable doubt. Both are sustainable.

The allegation of the indictment is that:

"The said Harry West being then and there a person of the age of 25 years or more."

This is a material allegation, and it was incumbent upon the State to prove this essential beyond a reasonable doubt.

We must discriminate between age as a matter of fact and age as a matter of appearance. The statute and indictment deal with age as a matter of fact. It is of the very essence of the crime as charged. Is the evidence of a medical expert, based upon his superficial observation of a person, competent, and therefore admissible, as opinion evidence? Is it sufficient to establish guilt beyond a reasonable doubt?

The opinions of physicians and surgeons of practice and experience are admissible in evidence upon questions that are strictly and legitimately embraced in their profession and practice, but the opinions of medical men are not admissible on conclusions or inferences which it is the province of the jury to draw for themselves, or on matters of mere speculation. If the jurors are in possession or can be put in possession of all the facilities for forming a correct opinion that the witness had, they must come to their conclusion unembarrassed by the opinion of others. Unless the inquiry can be regarded as involving some matter of science or technical skill, the opinions of experts are of no higher probative force than the opinions of laymen on the same subject. In the instant case, the medical experts were not in possession of any particular or peculiar knowledge of the human system of the defendant, in making answer to the question propounded, and it is admitted by the expert that the medical profession has no standard whereby such opinions could be tested or based.

It is true that the line between questions of science or professional skill to which an expert may legally testify, and questions of mere judgment, which the jury alone are to answer, upon the facts proved, is not always susceptible of being clearly defined; but I have no hesitation in saying that the testimony as disclosed by the record in the case at bar is too uncertain, indefinite, and speculative to form the basis of judicial action, or sufficient to subject and deprive a citizen of his liberty for the rest of his natural life.

I am not disposed to extend the doctrine of expert testimony into the field of hypothetical conjecture and probability, and to

give certainty, as evidence, to that which, in its very nature, must be wholly uncertain and unsatisfactory, especially so when the rule of law requires the proof of the question in issue to be established beyond a reasonable doubt.

In *State v. Smith*, 61 N.C. 302, the defendant was indicted and convicted for carnally knowing and abusing a female child under the age of consent, to wit, 10 years of age. There was evidence offered tending to show that the child was under 10 years of age. No objection was made to the evidence until after the jury returned its verdict, when the defendant entered his exceptions. Although it is recognized in the decision that the exception came too late, the court held that, as the exact age of the child was not known, it was competent for medical experts to give their opinion that she was under 10 years of age.

We have no quarrel with the rule announced. We are not dealing with a case involving a child of tender years or an old man in dotage. It is a case in which age is of the essence of the crime as charged. It is generally recognized that there is a zone of age prior and subsequent to the maturity of human beings when the court, in the exercise of judicial discretion, may legally receive evidence of this character. In *Elsner v. Supreme Lodge K. & L. of Honor*, 98 Mo. 640 (11 S. W. 991), it is said:

"No rule has yet been framed that can safely be applied as a touchstone for the difficulties that arise upon this subject. The differences of opinion between courts of last resort attest this. * * * Its relevancy in each particular case will depend on the nature of the issue to which it is directed."

It is well settled that expert evidence is proper when the age of a child is at issue, and it has often been received concerning the age of an absent adult. *Hartshorn v. Metropolitan Life Ins. Co.*, 55 App. Div. (N. Y.) 471. Whether a child was or was not at its birth a fully developed child is a matter that is subject to expert opinion testimony. *Daegling v. State*, 56 Wis. 586. The reason is quite apparent. Even a lay witness (a mother of four children) was held competent to express her opinion whether a baby seen by her on a certain occasion was a newborn baby. *Stewart v. Anderson*, 111 Iowa 329.

When a person lacks several years of his majority, a witness may testify that he believed from his appearance that he was a

minor. *State v. Bernstein,* 99 Iowa 5; *Commonwealth v. O'Brien,* 134 Mass. 198. But see *State v. Koettgen,* 89 N. J. L. 678.

It is quite universally recognized judicially, with fairly well defined exceptions, that a nonexpert cannot give his opinion upon the question of age. In *Ham v. State,* 156 Ala. 645, it is said:

"Will Bryant had testified as a witness before the jury. They saw him, and were as capable of drawing inferences as to his age (based on his appearance) as was the witness Page. The court erred in allowing the witness to testify that Bryant 'looked to be 40 or 45 years old.' "

In *State v. Robinson,* 32 Ore. 43, the trial court refused to permit a lay witness for the defense to express his opinion as to the age of the prosecutrix, and the opinion reads:

"This was not a case for the admission of opinion evidence as to the age of a person. The prosecutrix was present at the trial, and testified at great length, and the jury were just as competent to form an opinion as to her age from her size, appearance, and development as the witness."

See, also, *State v. Salgado,* 38 Nev. 64. If the prosecutrix had been absent during the trial, a different rule would prevail. *State v. Grubb,* 55 Kans. 678.

"Possibly witnesses could speak with some confidence of the probable age of an infant in the arms of its nurse; but development after that stage is so unequal that it would be dangerous to receive opinion evidence, at least of a nonexpert, upon a question of such vital importance to the accused." *Martin v. State,* 90 Ala. 602.

In the case, the question was whether the defendant, who was indicted for murder, was under or over the age of 14 years at the time of the offense charged, and it was held that a witness who had known him seven or eight years was incompetent to testify that "in his opinion or judgment" he was between 15 and 16 years old. The inference or indirect reference to expert testimony is pure dictum.

In a criminal case in which a felony is charged, the jurors necessarily see the prisoner during the entire progress of the trial. They may and will draw their inferences as to age, based on the appearance of the prisoner, if age is a fact to be con-

sidered. This presupposes that some competent evidence has been introduced on the question by the party having the burden of proof; otherwise their inferences would not be called into being.

The opinion of medical experts is admissible when such experts qualify on the particular subject in issue and it is shown that their profession or science recognizes some standard or principle under which the opinion may be properly classified as expert. In what respect, we ask, is a medical man, under the circumstances of the case at bar, more competent than a non-expert to express his opinion as to the age of a person when that opinion is based upon mere observation of him in the court room?

The testimony in the instant case, to which proper and timely objections were made, constitutes but mere guess and conjecture on the part of the medical experts. The opinion expressed was not based upon any accepted medical standard, but it is affirmatively shown that the opinion was based on the superficial observation of the defendant, as to his facial appearance only. The objections to the competency of the witness and of the evidence should, in my opinion, have been sustained.

For the reasons indicated herein, I would reverse.

FAVILLE and VERMILION, JJ., join in the dissent as to the division on corroboration.